**LAWLOR et al.**

v.

**NATIONAL SCREEN SERVICE CORP. et al.**

No. 11210.

United States Court of Appeals Third Circuit.

Argued Feb. 1, 1954.

Decided March 30, 1954.

Rehearing Denied April 23, 1954.

Francis Anderson, Philadelphia, Pa. (Gray, Anderson, Schaffer & Rome, Philadelphia, Pa., on the brief), for appellants.

Louis Nizer, New York City (Phillips, Nizer, Benjamin & Krim, New York City, Walter S. Beck, New York City, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Louis J. Goffman, Mitchell E. Panzer, Philadelphia, Pa., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Wm. A. Schnader, Earl G. Harrison, Edward W. Mullinix, Philadelphia, Pa., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This suit arises upon a matter collateral to the distribution and exhibition of motion picture films. The plaintiffs ("Poster Co.") are engaged in the business of leasing advertising posters

("standard accessories") to exhibitors in the Philadelphia area. The defendant ("Screen Corporation") distributes standard accessories, specialty accessories and "trailers" in the Philadelphia area and on a nation-wide basis. Screen Corporation has been granted exclusive licenses to distribute this material by all of the major moving picture producers.

In 1942 Poster Co. instituted a treble-damage suit against Screen Corporation and three of the eight producers who are defendants in the present action. Poster Co. also sought an injunction. By stipulation of the parties this suit was dismissed with prejudice on April 21, 1943. By a contract dated the same day, Screen Corporation agreed to furnish Poster Co. with standard accessories and granted Poster Co. a nonexclusive license to compete with it in Philadelphia. This contract was renewed in 1946 for a five-year period.

In 1949 Poster Co. commenced the present action against Screen Corporation and the eight producers, and again sought an injunction and treble damages from 1943 to 1949. In 1951 Judge McGranery granted Poster Co.'s motion for summary judgment as to an injunction against Screen Corporation only, but a final decree was never framed. In 1953 Judge Kirkpatrick granted the defendants' motion to dismiss on the grounds that the 1942 judgment was res judicata of this claim.

The phase of the doctrine of res judicata here concerned is the effect of the 1942 dismissal with prejudice as a bar to the present suit. No question of collateral estoppel by the former judgment is involved because the case was never tried and there was not, therefore, such finding of fact which will preclude the parties to that litigation from questioning the finding thereafter.[1] Nor is there any question of merger of plaintiffs' claims by the 1942 judgment, because, by the dismissal with prejudice, the defendant is the record winner in the original suit.

What did the 1942 judgment do to the possibility of recovery in this suit? It should be noted at the outset that our problem here is not affected by the fact that the dismissal of the 1942 action was by stipulation instead of the result of a trial on the facts and the law. A consent judgment or, like the one present, one which is a "dismissal with prejudice" has the same effect as a bar as if the case had gone to trial and the judgment rendered thereafter. 2 Freeman on Judgments 1395–96 (5th ed. 1925); United States v. Parker, 1887, 120 U.S. 89, 7 S.Ct. 454, 30 L.Ed. 601; Urbino v. Puerto Rico Ry. Light & Power Co., 1 Cir., 1947, 164 F.2d 12.

The decision of the case is going to depend upon whether the plaintiffs in the present suit are suing upon the "same cause of action" as that upon which they sued in 1942 and lost. If they are, then they are barred from suing again. If they are not, they may maintain this action. This Court struggled with the "cause of action" question in Williamson v. Columbia Gas & Electric Corp., 3 Cir., 1950, 186 F.2d 464, but the problem in that case was so different from the one here that we do not see that it materially aids our solution. It is recognized that the term may change its meaning when

[1] "(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. * * *

"(2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action." Restatement, Judgments § 68 (1942). For provisions regarding questions of law, see § 70. The Supreme Court has recently held that when, as here, there has been no hearing, no stipulations of fact, no briefs filed, no oral argument, and no showing that the issues were determined by the court the judgment has no effect as collateral estoppel. United States v. International Building Co., 1953, 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182.

used in different situations. Restatement, Judgments, Introductory Note p. 239 (1942). There is already a good-sized body of legal literature on the question of what constitutes a cause of action, a subject upon which learned doctors disagree. Some of the literature on the problems is reviewed in "Res Judicata Reexamined" by Edward W. Cleary in 57 Yale Law Journal 339, 340 n. 7 (1948). Perhaps some words of that author (though not in context) show the difficulties here involved. He is talking about situations where a plaintiff splits his cause of action and he says at page 346: "In deciding such cases, the concept of a cause of action possesses real utility if applied with realization of what actually is at issue and with due regard for the other factors herein discussed." This sounds easy if one says it fast. The core of our problem is to find out whether what is at issue is the same thing as what was at issue.

Some situations are easy to solve and those are the ones upon which it is easy to find authority. Take the case of a single isolated tort, for instance. A attacks B and beats him. Six months later he does it again. Whatever judgment might be rendered, for either party, in a suit for the first battery would not be a bar to a suit for the second battery. Restatement, Judgments § 61, comment c (1942). The only possibility of its having any effect in the suit for the second battery would be the binding effects of collateral estoppel, if there were any. We have somewhat the same thing where the tort claimed is a repeated trespass to land by entering and cutting timber. Here, too, the invasion of the plaintiff's interest is a separate one each time and recovery or defeat in a first suit will not preclude a second unless some element of collateral estoppel is involved.[2] When the plain-

tiff's complaint is for a nuisance maintained by the defendant or for a continuing invasion of plaintiff's land, by a structure on the defendant's land, then the question becomes complicated with factors such as the permanence of the structure, whether the invasion can be abated by means of an injunction, and so on. Here the problems have become so complex that there is little to be gained by referring to analogies which, themselves, show only a state of confusion.[3]

All this leads up to the instant problem but does not solve it. We have a further difficulty. Conspiracy alone is not a tort although it may be a crime, as pointed out in the Columbia Gas case cited above. Acts done in pursuance of the conspiracy become actionable when they hurt a plaintiff. On the other hand if the plaintiff complains about a conspiracy, asks for damages for acts done pursuant thereto and to have the conspiracy stopped by injunction, when he loses that lawsuit by judgment is he barred from thereafter claiming damages for other acts, or further acts, which he says are done in furtherance of the original conspiracy? We think he is, although neither counsel nor we have found an instance where on this very set of facts a court has so decided.

■ The following question then becomes the next one to answer. Did the plaintiffs in their 1942 suit base their claim upon essentially the same course of wrongful conduct of which they complained in 1949? Judge Kirkpatrick thought so and so decided. We agree. It is true that there are some additional allegations, some new acts which the plaintiffs say the defendants have done since the earlier suit. But we think in substance the complaint is the same and that what plaintiffs object to is an alleged combination of the defendants to do illegal things harmful to the plaintiffs' business and acts done pursuant to

2. Avery v. White, 1910, 83 Conn. 311, 76 A. 360, discussed in 2 Freeman on Judgments 1305 (5th ed. 1925).

3. See 2 Freeman, op. cit. supra note 2, at 1295 and following. For analysis of one state's difficulty along this line, see Goodrich, "Permanent Structures and Continuing Injuries—The Iowa Rule," 4 Iowa L.Bull. 67 (1918).

that combination. Since plaintiffs by their consent judgment in 1942 had an adjudication against their claim at that time we do not think they improve their position by reiterating essentially the same complaint in 1949.

. Additional defendants were joined in the 1949 suit. Judge Kirkpatrick met this point as follows:

> "The defense of res judicata is available to those defendants in the present suit who were not joined in the 1942 action. In Bruszewski v. United States [3 Cir.], 181 F.2d 419, the Court pointed out that where 'res judicata is invoked against a plaintiff who has twice asserted essentially the same claim against different defendants, courts have * * * enlarged the area of res judicata beyond any definable categories of privity between the defendants.' The only question is whether the relationship between all the defendants is close enough to make it a fair and proper application of the policy of the law that there should be an end to litigation. I have no doubt that the relationship of the defendants in this case, taking into consideration the allegations of the 1942 complaint, is close enough to bring them all within the scope of the doctrine of res judicata."

We cannot improve upon this statement.

The plaintiffs claim that the 1942 suit was settled because of "duress." Of course it is not suggested that there was any physical compulsion. What is meant is that their economic position was such that this was the best settlement they could get. It is well settled that merely because one enters into an agreement which he would not enter if he did not need the money there is not such duress as will void the contract. See Rector v. Suncrest Lumber Co., 4 Cir., 1931, 52 F.2d 946; and Restatement, Contracts § 494 (1932). Lest this generalization be thought too sweeping it should be stated as a matter of

caution that it does not apply to settlements of suits by railroad employees against employers for personal injuries, seamen's cases and the like.

The judgment will be affirmed.