LAWLOR ET AL., TRADING AS INDEPENDENT
POSTER EXCHANGE, v. NATIONAL SCREEN
SERVICE CORP. ET AL.

No. 163.    Argued February 9–10, 1955.—Decided June 6, 1955.

*Francis Anderson* argued the cause and filed a brief for petitioners.

*Louis Nizer* argued the cause and filed a brief for the National Screen Service Corporation, respondent.

*Earl G. Harrison* argued the cause for the Columbia Pictures Corporation et al., respondents. With him on the brief were *Wm. A. Schnader* and *Edward W. Mullinix* for Loew's Incorporated et al., and *Louis J. Goffman* for Warner Bros. Pictures Distributing Corporation, respondents.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This is an action to recover treble damages for alleged violation of the federal antitrust laws. The only question presented is whether the action is barred, in the circumstances of the case, under the doctrine of *res judicata*.

Petitioners are engaged in the business of leasing advertising posters to motion picture exhibitors in the Philadelphia area. Such posters, known in the trade as standard accessories, embody copyrighted matter from the motion pictures being advertised. Until recent years, standard accessories could be purchased directly from the motion picture companies themselves. Beginning with Paramount in 1939, however, the eight major producers granted to National Screen Service Corporation the exclusive right to manufacture and distribute various advertis-

ing materials, including standard accessories as well as specialty accessories and film trailers, for their motion pictures. RKO followed in 1940, Loew's in 1942, Universal in 1944, Columbia in 1945, United Artists and Warner Brothers in 1946, and 20th Century Fox in 1947.

In 1942, together with a number of others in similar businesses, petitioners commenced a treble-damage antitrust action against National Screen and the three producers who had already granted exclusive licenses to National Screen. The complaint alleged that the defendants had conspired to establish a monopoly in the distribution of standard accessories by means of the exclusive licenses and that the plaintiffs' businesses had been injured as a consequence. The complaint also alleged that National Screen was then negotiating with the other major producers to procure similar licenses. In addition to damages, an injunction was sought against the defendants' "illegal acts and practices."

In 1943, prior to any trial, the suit was settled. The basis of the settlement was an agreement by National Screen to furnish the plaintiffs with all standard accessories distributed by National Screen pursuant to its exclusive license agreements with producers, including exclusive license agreements which might be executed in the future. In exchange, the plaintiffs agreed that they would withdraw the suit and that they would pay National Screen for the materials at specified prices. Pursuant to the settlement, the suit was dismissed "with prejudice" by court order. No findings of fact or law were made.

The sublicense was to run three years. In 1946 it was renewed for another five-year term. In 1949, while the sublicense was still in force, petitioners brought the instant action, again seeking treble damages and injunctive relief. Named as defendants—respondents here—were

National Screen, the three producers who were parties to the 1942 suit, and the five producers who licensed National Screen subsequent to the dismissal of the 1942 suit.

In their present complaint, petitioners allege that the settlement of the 1942 suit was merely a device used by the defendants in that case to perpetuate their conspiracy and monopoly. They also allege: that five other producers have joined the conspiracy since 1943; that National Screen has deliberately made slow and erratic deliveries of advertising materials under the sublicense in an effort to destroy petitioners' business; and that for the same purpose National Screen has used tie-in sales and other means of exploiting its monopoly power.[1] Petitioners seek damages for resulting injuries suffered from August 16, 1943—in other words, for a period beginning several months after the dismissal of the 1942 complaint.

In 1951, on petitioners' motion for summary judgment, the District Court held that petitioners were entitled to injunctive relief against National Screen because the undisputed facts supported petitioners' claim of unlawful monopoly.[2] As to the producers, however, the District Court held that conflicting evidence on the issue of conspiracy made a trial necessary.[3] But in 1953, before any trial was held and before a decree against National Screen could be framed, the defendants moved to dismiss the action on the ground that the 1943 judgment was *res judicata*. The District Court, another judge then sitting, granted the motion and the Court of Appeals

---

[1] "Defendant NATIONAL, illegally and with intent to destroy plaintiff's business, deliberately reduces the rental price of said motion picture talking trailers to exhibitors if said exhibitors, including plaintiff's customers, agree beforehand to purchase or lease for the exploitation of all of their films exhibited, standard accessories and advertising materials directly from the defendant NATIONAL."

[2] 99 F. Supp. 180, 188.

[3] *Ibid.*

for the Third Circuit affirmed.[4]   We granted certiorari because of the importance of the question thus presented in the enforcement of the federal antitrust laws.[5]

The basic distinction between the doctrines of *res judicata* and collateral estoppel, as those terms are used in this case, has frequently been emphasized.[6]  Thus, under the doctrine of *res judicata,* a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action.   Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.   Recognizing this distinction, the court below concluded that "No question of collateral estoppel by the former judgment is involved because the case was never tried and there was not, therefore, such finding of fact which will preclude the parties to that litigation from questioning the finding thereafter."[7]   Turning then to the doctrine of *res judicata,* the court correctly stated the question before it as "whether the plaintiffs in the present suit are suing upon the 'same cause of action' as that upon which they sued in 1942 and lost."[8]   The court answered the question in the affirmative on the ground that the two suits were based on "essentially the same course of wrongful conduct."[9]   The court

---

[4] 211 F. 2d 934.

[5] 348 U. S. 810.

[6] *E. g., Cromwell* v. *County of Sac,* 94 U. S. 351, 352–353; *United States* v. *Moser,* 266 U. S. 236, 241.   See also Restatement, Judgments, §§ 47, 48, 68.   The term *res judicata* is used broadly in the Restatement to cover merger, bar, collateral estoppel, and direct estoppel. *Id.,* c. 3, Introductory Note.

[7] 211 F. 2d 934, 935.

[8] *Ibid.*

[9] *Id.,* at 936.

acknowledged that "there are some additional allegations, some new acts which the plaintiffs say the defendants have done since the earlier suit" and that "Additional defendants were joined in the 1949 suit," but concluded that "in substance the complaint is the same. . . ." [10]

It is of course true that the 1943 judgment dismissing the previous suit "with prejudice" bars a later suit on the same cause of action.[11] It is likewise true that the judgment was unaccompanied by findings and hence did not bind the parties on any issue—such as the legality of the exclusive license agreements or their effect on petitioners' business—which might arise in connection with another cause of action.[12] To this extent we are in accord with the decision below. We believe, however, that the court erred in concluding that the 1942 and 1949 suits were based on the same cause of action.

That both suits involved "essentially the same course of wrongful conduct" is not decisive. Such a course of conduct—for example, an abatable nuisance—may fre-

---

[10] *Id.*, at 936–937.

[11] *United States* v. *Parker,* 120 U. S. 89, 95; *United States* v. *International Building Co.,* 345 U. S. 502, 506.

[12] See *United States* v. *International Building Co., supra,* at 505:
"We conclude that the decisions entered by the Tax Court for the years 1933, 1938, and 1939 were only a *pro forma* acceptance by the Tax Court of an agreement between the parties to settle their controversy for reasons undisclosed. There is no showing either in the record or by extrinsic evidence (see *Russell* v. *Place,* 94 U. S. 606, 608) that the issues raised by the pleadings were submitted to the Tax Court for determination or determined by that court. They may or may not have been agreed upon by the parties. Perhaps, as the Court of Appeals inferred, the parties did agree on the basis for depreciation. Perhaps the settlement was made for a different reason, for some exigency arising out of the bankruptcy proceeding. As the case reaches us, we are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration."

quently give rise to more than a single cause of action.[13]
And so it is here. The conduct presently complained of
was all subsequent to the 1943 judgment.[14] In addition,
there are new antitrust violations alleged here—deliber-
ately slow deliveries and tie-in sales, among others—not
present in the former action. While the 1943 judgment
precludes recovery on claims arising prior to its entry, it
cannot be given the effect of extinguishing claims which
did not even then exist and which could not possibly have
been sued upon in the previous case. In the interim,
moreover, there was a substantial change in the scope of
the defendants' alleged monopoly; five other producers
had granted exclusive licenses to National Screen, with the
result that the defendants' control over the market for
standard accessories had increased to nearly 100%.[15]
Under these circumstances, whether the defendants' con-
duct be regarded as a series of individual torts or as one
continuing tort, the 1943 judgment does not constitute
a bar to the instant suit.

This conclusion is unaffected by the circumstance that
the 1942 complaint sought, in addition to treble damages,
injunctive relief which, if granted, would have prevented
the illegal acts now complained of. A combination of

---

[13] Restatement, Judgments, § 62, Comment g. Antitrust violations
are expressly made abatable. 15 U. S. C. § 26.

[14] Restatement, Judgments, § 62, Comment g. Compare *Federal
Trade Commission* v. *Raladam Co.*, 316 U. S. 149, 150–151.

[15] 99 F. Supp. 180, 183–184. The complaint in the 1942 suit alleged
that 40% of National Screen's business in standard accessories con-
sisted of standard accessories for the motion pictures of two (Para-
mount and RKO) of the three defendant producers. The complaint
also alleged that 20% to 33% of the plaintiffs' business consisted of
standard accessories for the motion pictures of the third defendant
producer (Loew's). As to the pertinence of "the percentage of
business controlled," see *United States* v. *Columbia Steel Co.*, 334
U. S. 495, 527–528.

facts constituting two or more causes of action on the law side of a court does not congeal into a single cause of action merely because equitable relief is also sought. And, as already noted, a prior judgment is *res judicata* only as to suits involving the same cause of action.[16]   There is no merit, therefore, in the respondents' contention that petitioners are precluded by their failure in the 1942 suit to press their demand for injunctive relief.   Particularly is this so in view of the public interest in vigilant enforcement of the antitrust laws through the instrumentality of the private treble-damage action.   Acceptance of the respondents' novel contention would in effect confer on them a partial immunity from civil liability for future violations.   Such a result is consistent with neither the antitrust laws nor the doctrine of *res judicata*.

With respect to the five defendants who were not parties to the 1942 suit, there is yet a second ground for our decision.   The court below held that their relationship to the other defendants was "close enough to bring them all within the scope of the doctrine of res judicata." [17]   With this conclusion, we cannot agree.   We need not stop to consider the outer bounds of the rule of privity and allied concepts.[18]   It is sufficient here to point out that the five defendants do not fall within the orthodox categories of privies; [19] that they could not have been joined in the 1942 case since they did not even enter the alleged conspiracy until after the judgment on which they now

---

[16] That the same rule is applicable in equity, see Restatement, Judgments, § 46, Comment b; *id.*, § 53, Comment c.

[17] 211 F. 2d 934, 937.

[18] See Restatement, Judgments, c. 4.

[19] Restatement, Judgments, § 83, Comment a:
"those who control an action although not parties to it . . . ; those whose interests are represented by a party to the action . . . ; successors in interest . . . ."

rely;[20] that in any event there was no obligation to join them in the 1942 case since as joint tortfeasors they were not indispensable parties;[21] and that their liability was not "altogether dependent upon the culpability" of the defendants in the 1942 suit.[22]

The judgment of the Court of Appeals is reversed and the case is remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.

---

[20] Compare *Bruszewski* v. *United States,* 181 F. 2d 419 (C. A. 3d Cir.), on which both courts below relied. It should also be noted that the *Bruszewski* decision was an application of collateral estoppel and not *res judicata* as that term is used here.

[21] Restatement, Judgments, § 94. See *Bigelow* v. *Old Dominion Copper Co.,* 225 U. S. 111, 132.

[22] *Id.,* at 127.