**In re RECORD CLUB OF AMERICA, INC., Debtor.**

Civ. No. 82–0989.

United States District Court, M.D. Pennsylvania.

April 20, 1983.

Nancy Grossman, New York City, for record club.

John W. Thompson, Jr., York, Pa., for United Artists.

## MEMORANDUM

RAMBO, District Judge.

Record Club of America, Inc. (hereinafter RCOA) has filed a petition for reorganization under Chapter XI of the Bankruptcy Act. United Artists Music and Records Group, Inc. (hereinafter United Artists) filed a proof of claim in the amount of $500,000.00 based on moneys allegedly due and owing under a nonexclusive licensing

---

**1.** Rule 301 is an adaptation of, and supersedes § 57(a) of the Bankruptcy Act. Editorial Com-

agreement between the parties. RCOA objected to the proof of claim submitted by United Artists to the bankruptcy court. On June 1, 1982 after hearings, Bankruptcy Judge Wood allowed the claim of United Artists in the amount of $179,759.66. United Artists has filed an appeal of Judge Wood's opinion with this court. The parties have thoroughly briefed the issues and this court does not require oral argument.

██ United Artists has three general grounds for its appeal. One of the bases for the appeal is that the bankruptcy court erred in failing to find the creditor's claim "self-sustaining." United Artists argues that Rule 301[1] of the Rules of Bankruptcy Procedure defines the evidentiary effect of a properly filed proof of claim. Rule 301(b) says:

> (b) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

The bankruptcy court's failure to find the proof of claim "self-sustaining" is, according to the appellant, in opposition to the requirement of Rule 301(b).

The disputed ruling of Judge Wood occurred at a hearing before the bankruptcy court on April 27, 1981. The following exchange between Mr. McGuire for RCOA, Mr. Thompson for United Artists, and the court is relevant to the issue.

MR. MCGUIRE: We have no idea since this claim is not selfsustaining [sic] what the claimant's position is, but I imagine it will develop.

MR. THOMPSON: Excuse me. I do not mean to interrupt Mr. McGuire, but certainly I would not let pass his self-serving declaration, that the claim is not selfsustaining [sic] and indeed that brings up a problem that was discussed while we were agreeing on the documents.

Mr. McGuire and I are going to have a dispute as to who has the laboring—or,

ment U.S.C.S. Rules of Bankruptcy, Rule 301.

who bears the risk of nonpersuasion and Mr. McGuire has already indicated that he is going to rest after the presentation of a brief case and some documentation being presented to the Court, and I suggest that that sort of highlights the problem of this whole proceeding.

The debtor did not request a pre-trial conference with the Court. There has been no ruling as to the self-sustaining nature of the claim and indeed the parties are before the Court, even today, ready to present its testimony, squabbling about who is going to have to sustain their case or not, and I suggest that perhaps this is unfortunate but unless there is a ruling by the Court on who must bear the risk of nonpersuasion I suggest that we are not sure who's supposed to do what first or in what posture.

JUDGE WOOD: He's proposing to go forward and having done so, you may do so.

MR. THOMPSON: That's the point, Your Honor. I want to alert the Court to the quandary. Mr. McGuire is going to take the position as to a certain date, I believe, that United Artists is no longer entitled to any royalties period. He will rest on that position as I understand without offering any testimony as to the validity or nonvalidity of the claim amount of royalties due of approximately $500,000.

Now, if that's his position and he is wrong on his theory, I certainly do not wish to burden the Court or my client in going through a day of Hearing when we are not even going to get to that point because they haven't met their burden of rebutting.

JUDGE WOOD: I don't consider the claim self-sustaining. That has to be dealt with—

MR. THOMPSON: If that's going to be the Court's ruling, then I certainly would like to know that so I know whether I'm presenting a case in rebuttal to what Mr. McGuire's clients say or whether or not I'm presenting a Case in Chief indeed as a plaintiff's case.

JUDGE WOOD: I don't know what he's proposing to do. If it becomes a question at this point as to whether you have something to prove in order to obtain $500,000, you do.

MR. THOMPSON: Then I take it that the Court would rule that the claim is not selfsustaining [sic] on its face?

JUDGE WOOD: I would.

MR. THOMPSON: Fine.

JUDGE WOOD: I would.

MR. THOMPSON: Fine. That certainly answers the procedural question.

JUDGE WOOD: Alright.

Transcript of Hearing before Bankruptcy Court at 17–19 (Apr. 27, 1981).

The effect of Rule 301(b) has been described in the following way:

[T]he objector must present "some evidence" contradicting the proof of claim, whereupon the bankruptcy judge must weigh the evidence presented by the objector against the proof of claim, which itself retains some weight as evidence, and any evidence presented by the claimant. After weighing the evidence, the judge must make a finding of fact as to the validity and amount of the claim. *In re Friedman,* 436 F.Supp. 234, 237 (D.Md. 1977) (citations omitted).

Judge Miller in *In re Friedman* went on to conclude that:

The Bankruptcy Rules anticipate (1) that an unobjected to proof of claim will be deemed allowed, Rule 306(b); (2) that, upon objection, a hearing will be held, evidence will be presented, and a finding of fact as to the validity and amount of the claim will be made by the bankruptcy judge, *see* Rule 306(c); and (3) that upon appeal to the district court, the finding of fact may be changed only if clearly erroneous, Rule 810. In this scheme, there is no place for an intermediate ruling that there is not enough evidence to rebut the presumption created by the proof of claim.

For these reasons and in accord with the weight of authority above cited, this court holds that when an objector to a claim goes forward at the hearing with

some evidence contradicting the claim, the objector's burden of going forward with the evidence is met. Then the bankruptcy judge must weigh the evidence presented by the objector against the proof of claim, together with any evidence presented by the claimant, and he must make a finding of fact as to the validity and amount of the claim. *Id.* at 237–38 (citations omitted).

Judge Wood's ruling at page 19 of the transcript of the April 27, 1981 hearing is completely consistent with the procedure outlined by Judge Miller. Judge Wood says, "I don't know what he's proposing to do. If it becomes a question at this point as to whether you have something to prove in order to obtain $500,000, you do." All this ruling by Judge Wood appears to be is that the risk of non-persuasion is on the claimant, United Artists. Mr. Thompson himself phrased the question upon which he sought a ruling in terms of "who must bear the risk of nonpersuasion." Transcript of Hearing of April 27, 1981 at 18. The effect of prima facie evidence is to shift the burden of production to the objector. The risk of nonpersuasion remains at all times with the claimant. *Whitney v. Dresser*, 200 U.S. 532, 534–35, 26 S.Ct. 316, 317, 50 L.Ed. 584 (1906); 436 F.2d at 237. *Cf.* Fed.R.Evid. 301. Judge Wood's ruling is legally correct and will be affirmed by this court.

■ United Artists also disputes the conclusion of the bankruptcy court that "insufficient evidence was offered to prove the number [of units] distributed [after June 30, 1974]." *In re Record Club of America, Inc.,* Bk. No. 74–553 at 3 (Bkry.M.D.Pa. Jun. 1, 1982). The basis of the dispute comes from the bankruptcy court finding that "United or its affiliates shipped a total of 2,015,556 units to RCOA" under the licensing agreement. *Id.* at 1 (finding of fact No.

4). The appellant would subtract from the total shipped the amount the bankruptcy court determined that RCOA distributed prior to June 30, 1974 which is 1,724,103.[2] *Id.* at 2 (findings of fact Nos. 5 and 12). The 291,453 unaccounted for units would arguably still remain in RCOA's control. The appellant seeks an award of royalties for these arguably unaccounted for units. Appellant's reply brief at 2.

The bankruptcy court decision determined the amount of royalties due and owing by looking at the amount of units "distributed" rather than the units shipped. Bk. No. 74–553 at 1 (finding of fact No. 3) (June 1, 1982). This finding is based on Section 3 of the nonexclusive licensing agreement between the parties. Section 3 computes royalties "on all Licensed Albums *sold* " under the agreement or on the excess frees[3] "distributed" under the agreement. The agreement clearly operates in terms of distribution by RCOA and not shipment by United Artists. The bankruptcy court connected the finding of distribution as the royalty triggering event with the finding that "no report or other suitable evidence of distribution, if any, after June 30, 1974" was offered. Bk. No. 74–553 at 1 (finding of fact No. 2) (Jun. 1, 1982). The bankruptcy court's conclusion was that no royalties were due under the agreement after June 30, 1974. *Id.* at 3.

The difficulty with the bankruptcy court's analysis and conclusion is that some distribution of United Artists' product did occur after June 30, 1974. Transcript of hearing on Jun. 2, 1981 at 162; Bk. No. 74–553 at 3 (Jun. 1, 1982). The debtor admits that no royalties were paid on those units. Transcript of hearing on Jun. 2, 1981 at 162. The bankruptcy court concluded that "insufficient evidence was offered to prove the number distributed [after June

---

2. Appellant in his reply brief miscalculates the units distributed by not including the 81,208 units distributed between July 1, 1973 and June 30, 1974. Appellant's reply brief at 1. Bk. No. 74–553 at 2 (finding of fact No. 12).

3. Excess frees are the units distributed free in excess of 50% of the total distribution made by

RCOA. For example, if RCOA sold 1000 units and gave away 2000 units, then the total distributed would be 3000 units. Fifty percent of the units distributed would be 1500 units. Since RCOA gave away 2000 units, there.would be 500 excess frees for which royalties would be paid.

30, 1974]". Bk.No. 74–553 at 3 (Jun. 1, 1982). The conclusion resulted in no royalties being imposed on the debtor for those distributions.

United Artists raises two objections to the bankruptcy court's conclusion that no royalties are due for the post-June 1974 distributions. First, United Artists reasserts its allegation that the risk of nonpersuasion is on the debtor. This court has concluded that the risk of nonpersuasion remains with the claimant. *See supra* at 5. Second, United Artists alleges that this case is governed by the rule in *Shapiro, Bernstein & Co. v. Remington Records, Inc.,* 265 F.2d 263 (2d Cir.1959). The United States Court of Appeals for the Second Circuit in *Shapiro* was resolving a controversy about copyrights and licensing of phonograph records. *Id.* at 265. Critical in establishing the amount of the defendants' liability were business records which the defendants either failed to keep or failed to produce. *Id.* at 269–273. Judge Burger writing for the Court concluded as follows:

> We hold (1) that the statute [17 U.S.C. § 1(e)] imposes on the defendants an obligation to keep production records to fulfill the duty to make sworn monthly reports to the copyright owner upon request; (2) that the defendants have frustrated the proof of the amount of liability, either by failing to disclose facts reasonably known to them or by failing to keep accurate production records; (3) that in these circumstances the opinion of the expert Berman should have been admitted into evidence. The trial court must be allowed wide discretion in receiving evidence, whether by way of expert opinion or otherwise, where defendants have availed themselves of the benefits of the Act but have failed to comply with its burdens; all doubts and uncertainties as to the volume of the unknown production should be resolved strictly against the defendants. 265 F.2d at 272–73.

The *Shapiro* case involved a statute which the court decided imposed on the defendants the obligation to keep the records. *Id.* at 272. The present case involves an agreement which imposed the record keeping obligation, but the agreement terminated on June 30, 1974 so its force after that date is questionable. *Shapiro* also involved defendants who were held to be tortfeasors and whose "tortious conduct, by its very nature, prevented the accurate ascertainment of the respective plaintiff's damages, which were undoubtedly sustained." *Arnold Productions, Inc. v. Favorite Films Corp.,* 176 F.Supp. 862, 866 (S.D.N.Y.1959). United Artists has not referred to any court which has determined that RCOA is a tortfeasor or is even in breach of the agreement between the parties. The present case is distinguishable from *Shapiro.*

Assuming for argument that the rule in *Shapiro* is applicable to or should be expanded to include the present facts, United Artists would still not prevail. The *Shapiro* rule does not change the basic rule which puts the risk of nonpersuasion on the claimant. What the *Shapiro* rule does is allow the trial court "wide discretion in receiving evidence." 265 F.2d at 272. The rule does *not* say that minimal evidence or evidence of questionable probative value will authorize the court to speculate about the amount in which a claim should be allowed. The Second Circuit in *Shapiro* left the acceptance or the rejection of the evidence to the sound discretion of the trial court, *id.* at 273, and there is no reason why the same procedure would not be appropriate in this case. United Artists' appeal of the bankruptcy court's decision that no royalties are due for the post-June 1974 distribution will be denied.

The appellant has a number of objections to findings of facts made by the bankruptcy court. These objections will be considered seriatim. The appropriate standard of review is set out in Rule 810 of the Rules of Bankruptcy Procedure. Rule 810 says,

> Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportu-

nity of the referee to judge the credibility of the witnesses.

■ First the appellant objects to the bankruptcy court's determination of the average royalty rate. The court calculated the average royalty rate by dividing the paid royalties by the number of units sold. The appellant's objection is that the court's calculation ignores the fact that the royalty rate for tapes was higher than the rate for records or that various units had a higher price than others. Appellant also argues that *if* RCOA gave away units with a higher price than the units sold, then the average royalty rate would be distorted.

The appellant's arguments miss on two points. Counsel for the appellant does not appear to understand what an average is. The very reason to use an average is to account for differentials in price between units when an item by item treatment is not possible. The court's average royalty reflects fairly the higher rate for tapes. The appellant's argument about the use of higher priced items as the bonus gifts must be rejected because he offers no facts to show that RCOA actually gave away more expensive units than it sold. Since the *if* clause of the assertion is unsupported, the whole allegation is logically defective. The bankruptcy court was not clearly erroneous in using an average royalty rate to calculate the amount due on the excess frees.

■ The appellant objects to the use of royalty statements prepared by the debtor and the "ignoring" of the testimony of claimant's auditor in determining the royalties due. The bankruptcy judge has had a full opportunity to hear the witnesses including the auditor. This court must give due regard to the bankruptcy judge's opportunity to evaluate the credibility of witnesses. *See* R.Bkry.Proc. 810.

The appellant, however, is not really challenging the bankruptcy judge's evaluation of the auditor's credibility. United Artists is, in fact, challenging the accuracy of the royalty statements prepared by the debtor and used by the bankruptcy court to determine the royalties due. The challenge to the royalty reports is based on an audit for the time period from October 1, 1970 to June 30, 1971. The audit allegedly showed a short fall of royalties paid of $64,044.49. The alleged discrepancy for that nine month period would thus arguably put in question the reports prepared by the debtor.

RCOA responded by asserting that the short fall did not in fact ever exist. The debtor argues that the $64,044.49 represents royalties allegedly due because of the distribution of excess frees. The United States District Court for the Southern District of New York has determined the question of when royalties on the excess frees were due. *Record Club of America, Inc. v. United Artists Records, Inc.,* 72 Civ. 5234 (S.D. N.Y. Jul. 30, 1974). Judge Conner held that royalties on the excess frees were due only upon the expiration of the original term of the argument. *Id.* at 18–19. Since no royalties were due on the excess frees at the time of the audit and the auditor included such royalties then the short fall does not exist.

A review of the auditor's report, Claimant's Exhibit A, shows that the audit included as royalties due for excess frees the amount of $64,055.24.[4] Judge Conner has clearly decided that royalties on the excess frees were *not* due until completion of the term of the agreement. 72 Civ. 5234 at 18–19. This court is bound by Judge Conner's decision under the doctrine of collateral estoppel. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). If the amount of royalties which are attributable to the excess frees is subtracted from the amount of royalties the auditor said was due, then the amount paid by RCOA and the amount the

**4.** The following is the relevant material from the auditor's report.

| | Excess frees | Royalty rate | Royalty due |
|---|---|---|---|
| 1. | 3,301 | .159043 | $ 525.00 |
| 2. | 26 | .334917 | 8.71 |
| 3. | 73,061 | .419067 | 30,617.45 |
| 4. | 61,083 | .503217 | $30,738.00 |
| 5. | 3,506 | .587367 | 2,059.31 |
| 6. | 159 | .671517 | 106.77 |
| | | Total | $64,055.24 |

auditor determined was due were virtually identical. The "short fall" does not exist. Since the "short fall" does not exist, the auditor's report is not a basis upon which to challenge the royalty reports kept by RCOA. The bankruptcy court was not clearly erroneous in relying on the RCOA royalty reports.

█ The claimant also objects to the method used by the bankruptcy court in calculating the 2.75% offset for record returns. Bk. 74–553 at 2 (finding of fact No. 11) (Jun. 1, 1982). The bankruptcy court reached this finding based on an average return rate for *all* suppliers of products to the debtor. The claimant's objection is that the return rate should have been calculated for United Artists products only.

The record shows the following evidence upon which the bankruptcy court based its decision. First, the agreement between the parties anticipates a reduction in royalties for "Albums which are returned because of defects in manufacturing or shipment error." License Agreement at ¶ 3(a). Second, the debtor supplied some testimony as to what the average return rate was for all its suppliers. Transcript of hearing on April 27, 1981 at 38–39. And third, RCOA offered some testimony that the return rate did not vary from supplier to supplier and that United Artists was typical. *Id.* at 40–78. The final conclusion arrived at by RCOA testimony was that a 2.75% return rate for shipment errors was appropriate. *Id.* at 77–78.

United Artists objected to each and every step in the process which arrived at the 2.75% figure. *Id.* at 38–78. The claimant, however, offered no evidence which would have tended to indicate that the return rate for United Artists' product was different than the other suppliers. United Artists argued at the April 27, 1981 hearing that the average return rate was inappropriate. Mr. Thompson said:

MR. THOMPSON: Shipment errors. The factor that we don't know is what percentage of United Artists product on the total distributed as a factor to determine what the adjustment is on the total shipment. In other words, if it's just you and I, and they shipped 75% of your product and 25% of my product and they average us both together and they say we make a 3% shipment error, that 3% applies to your 75% and my 25%, and there's nothing in the record at all to establish what the relationship is. That's why it's an improper basis to use an average. *Id.* at 75.

This analysis is clearly incorrect. It does not matter what portion of the total distribution was United Artists' product as long as the percentage of shipment error was approximately the same for each supplier. Judge Wood pointed out this mathematical reality to Mr. Thompson at the April 27, 1981 hearing. Judge Wood said:

JUDGE WOOD: And you don't need it [percentage of product shipped which was United Artists' product] if you have a percentage. You can apply the percentage to one or to a million. *Id.*

There is no evidence that the percent of shipment error for United Artists' product was different from other suppliers and there is some evidence to the contrary. The bankruptcy court was not clearly erroneous in applying the 2.75% shipment error rate.

█ United Artists' objects to the bankruptcy court's findings of fact which rely on royalty reports for the period July 1, 1973 through June 3, 1974 prepared by RCOA but allegedly not submitted to the claimant as required by the licensing agreement. Licensing Agreement at ¶ 6. Even assuming that the reports in question were not submitted to United Artists, it is not clear why that should disqualify the reports as evidence of the royalties due for the period between July 1, 1973 and June 3, 1974. The failure to submit the reports, if true, may subject RCOA to sanctions under the licensing agreement, *see* Licensing Agreement at ¶ 15(a), but the reports if they exist and are accurate could still be evidence of the amount of royalties owed for the period in question. *See* Fed.R.Evid. 401 and 402. United Artists does not challenge the authenticity of the reports and they clearly exist. The reliance of the bankruptcy court

on the royalty reports prepared by RCOA but not submitted to the claimant was not clearly erroneous. The use of the word "submitted" in finding of fact number 12 is not supported by the facts. The error is, however, harmless, because the evidence supports the conclusion as to the authenticity of the reports which is all that is necessary to support the finding of fact.

The claimant also raises questions about the bankruptcy court's "failure" to take judicial notice of rough inventories taken by the debtor-in-possession and the receiver. There is no evidence that the bankruptcy court ignored the inventories in question. Judge Wood wrote:

> Although counsel for United proffered alternative methods for calculation of royalties based on inventory shipped from United to RCOA, there is not sufficient evidence to support such a method of calculation. The proper method is that set forth in the parties' agreement as detailed in our finding of fact No. 3. This requires royalty calculations using factual data from the royalty reports for the period of October 1, 1970 to June 30, 1974 inclusive. Bk. 74–553 at 3 (Jun. 1, 1982).

A finding that there is "not sufficient evidence to support" the appellant's position is not equivalent to failing to take judicial notice of material in the record. There does not appear to be any merit in the appellant's objection.

The appellee has requested that the appeal which is the subject of this memorandum be declared frivolous and that the appellee's expenses be assessed against the appellant. As the extensive memorandum which was required to respond to the appeal indicates, there were a few points which had some merit. Other arguments, however, were so inconsistent with the record or with reality that this court wonders whether they were not included in the appeal just to slow down the attempted reorganization of the debtor and multiply the work load of this court. The United States Court of Appeals for the Third Circuit has recently expressed the frustration which is felt when meritless objections are pursued on appeal in tandem with one or two meritorious issues. *U.S. v. Hart,* 693 F.2d 286, 287 n. 1 (3d Cir.1982). The appellant in this case has included just enough substance to avoid the appellee's motion for expenses. This conclusion is not to be understood as affecting the taxation of costs against the appellant under Bankruptcy Rule 811.

For the reasons set forth above the appeal will be dismissed and the bankruptcy court affirmed.

## ORDER

IT IS HEREBY ORDERED THAT:

1. The decision of the bankruptcy court is affirmed.

2. The Clerk of the Court is to tax costs against the appellant as provided in Bankruptcy Rule 811.

3. The Clerk of the Court is directed to close the file on this case.