| | |
|---|---|
| RITA C. SABLAN, DEANNA C. SABLAN, MERCED M. SABLAN, RUDOLFO M. SABLAN, IGNACIO M. SABLAN, MAGDALENA M. SABLAN, MARIANO M. SABLAN, ESTATE OF MARIA S. REYES, and DAVID P. SABLAN, JR., <br><br> Plaintiffs, <br><br> vs. <br><br> VICENTE R. IGINOIF, JOVITA B. KISA, CLARA T. CAMACHO aka CLARA MALITE CAMACHO, MARIANAS PUBLIC LAND CORPORATION, JOSE T. VILLAGOMEZ, ROSA M. FEJERAN, LOURDES M. RANGAMAR, and GUADALUPE P. MANGLONA, <br><br> Defendants. | CIVIL ACTION NO. 88-366 <br><br><br><br><br> **MEMORANDUM OPINION** |

## THE PLEADINGS AND PARTIES

This litigation was initiated by the filing of a quiet title action by numerous plaintiffs. The property involved is known as Lot 347 and Lot 330, Island of Saipan. Lot 347 has ostensibly been subdivided and pursuant to a series of deeds, each plaintiff claims a portion of Lot 347 except plaintiff David P. Sablan who claims Lot 330.[1]/

---

[1]/ The litigation was commenced naming as defendants, "All Persons having any claim or interest in lots (347 and 330)." This method of suing unnamed defendants was disapproved in Aquino v. All Those Persons, etc., Civ. Action No. 88-128 (CTC 1988), and the plaintiffs filed an amended complaint, naming certain individuals. The litigation proceeded on the basis of the First Amended Complaint and the responsive pleadings thereto.

Defendant Guadalupe P. Manglona has answered and filed a counterclaim and cross claim and seeks to quiet title to the two lots in her.2/ The plaintiffs' reply to Manglona's counterclaim raises the issue as to the legality of Manglona holding any long term interest in lots 347 and 330 because of Article XII of the Constitution of the Commonwealth of the Northern Mariana Islands.3/

On May 31, 1988, defendants Clara T. Camacho, Rosa M. Fejeran, and Lourdes M. Rangamar sent a letter to plaintiffs' counsel and a copy was placed in the court file. All parties have treated this letter as an answer and a claim to lot 347 (but not to 330) and these three ladies presented their claim by testimony and documentary evidence.

Certain named defendants were not served, nor did they appear, to wit: Vicente R. Iginoif, Jovita Babauta Kisa, Marianas Public Land Corporation and Jose T. Villagomez.

### THE CLAIMS

The claims of the various parties are complicated by two significant factors. First, much of the history of the

2/
Actually the claim asserted by Guadalupe in her pleading is a life estate interest. During pretrial motions, it was determined that she obtained fee title with a contractual obligation to will the property to her surviving children (see, Order of February 23, 1989).

3/
Succinctly put, Article XII prohibits individuals who are not of Northern Mariana Islands descent from holding any long term interests in real property. It is conceded Guadalupe is not of Northern Marianas descent as defined by Article XII, Section 4.

**862**

chain of title to lots 347 and 330 is based upon conversations or non-written transactions purportedly occurring many years ago.[4] Second, the actual location of the property is difficult to ascertain because most of the pre-war Japanese monuments and land documents were destroyed during World War II.

The plaintiffs appear to concede that lot 347 was at one time owned by the Malite family[5] but it is claimed that Elias Sablan purchased the property sometime around 1938. In June of 1952, Determination of Ownership No. 188 was issued by the Trust Territory Government which determined that lots 330 and 347 were owned by Elias P. Sablan (Plaintiffs' Exhibit 2). Elias P. Sablan died in 1968 without a will and as far as can be determined, there has been no probate of his estate. Elias was married to Carmen Sablan who died in July of 1986. Just a few months prior to her death (February, 1986), Carmen executed a "Deed of Gift" which purportedly granted title to lot 330 to her grandson David J. Sablan.[6] (Plaintiffs' Exhibit 5). On the same day, she executed a similar document conveying "Part of

_____

[4] Pursuant to practice and procedures adopted by the courts in the 1970's and 1980's, hearsay testimony has been admitted for consideration in proving title to land. Support for the admission of this hearsay is derived from the Com.R.Evid., Rules 803(13), (19) and (20).

[5] Represented herein by defendants Clara T. Camacho, Rosa M. Fejeran and Lourdes M. Rangamar.

[6] This is apparently the same as the named plaintiff David P. Sablan, Jr.

Lot 347" to her daughter Maria Sablan Reyes. (Plaintiffs' Exhibit 4). It was through the subsequent deeds (Plaintiffs' Exhibits 6 and 10 through 27) that the plaintiffs assert their present claims, to wit:

1. Rita C. Sablan – Lots 347-3 and 347-7.
2. Deanna C. Sablan – Lot 347-1.
3. Merced M. Sablan – Lot 347-Rl.
4. Rudolfo M. Sablan – Lot 347-4.
5. Ignacio M. Sablan – Lot 347-5.
6. Magdalena S. Manahane – Lot 347-6.
7. Mariano M. Sablan – Lot 347-8.
8. Maria S. Reyes – Lot 347-2.

Defendant Guadalupe Manglona claims lot 330 in the following way. David M. Sablan and Guadalupe were married and in 1966 a family gathering was held. With most of the family present, Elias Sablan, the father of David, asked who would be willing to take over the Economic Development Loan Fund (EDLF) debt on the Blue Beach Motel which was built on lot 330. David was the only member of the family to volunteer and Guadalupe agreed to this. Elias stated that the property would then belong to David and Guadalupe. At the time of the divorce between David and Guadalupe in 1977, David was required to deed his interest in lot 330 (as well as 347) to Guadalupe. This is evidenced in Trust Territory High Court Civil Action 194-77, Sablan v. Sablan.

Guadalupe's claim to lot 347 is that since David, her ex-husband, is entitled to one-eighth interest (being one of eight children of Elias and Carmen), she succeeds to that right by virtue of the division of property in the divorce decree and

864

the subsequent quitclaim deed to her of David's interest in lot 347.

The Camacho, Fejeran, and Rangamar claim is to lot 347 only. It rests upon original ownership of lot 347 and other property by Ramon Malite. Ramon had two children, Luisa and Angel Malite. Luisa died without issue. Angel had two wives and the genealogical chart (Malite Exhibit C) shows that his son Elias Malite was married to Clara T. Camacho who had two children, Rosa Fejeran and Lourdes M. Rangamar. It is claimed that lot 347 has always been in the Malite family and the Sablan family never acquired it. In so far as the 1952 title determination is concerned, it is asserted there was no notice given to the Malite family and therefore the administrative proceedings were ineffective and could not divest the Malite interests.

## LOT 330

The defendant, Guadalupe Manglona, has forcefully argued that if any dispute over land cries out for final resolution, this is the one – the court agrees. Portions of the events surrounding the history of lot 330 have been litigated or settled in one way or another in three prior lawsuits. As to some of these lawsuits, some of the plaintffs may be barred by the doctrines of res judicata, collateral estoppel, or issue preclusion. In any event, the lawsuits, all subsequent to the 1966 Sablan family gathering, are most enlightening and give significant support to the version of

**865**

Guadalupe Manglona as to what occurred. In 1966, Elias Sablan was ailing and he needed assistance in having someone take over the debt which encumbered the Blue Beach Motel. David and Guadalupe were the only ones to take on the responsibility. In exchange, Elias orally transferred his interest in lot 330 to them. Both David and Guadalupe worked and managed the motel so that the debt was paid off and the property saved from possible loss. The plaintiffs assert that there was no transfer, let alone, a promise to have the property go to David and Guadalupe. However, the subsequent events clearly show that all members of the family raised no objection to the possession, control and management of the property by David and Guadalupe until many years later.

From 1966 to 1977, Guadalupe was the one most instrumental in operating, improving and leasing out the motel. In 1977 David filed for divorce and the divorce file (High Court Civil Action 194-77) reflects a decree of divorce dated September 1, 1977. This decree was substantially formulated by a stipulation of the parties in open court. Of particular note is that all interest of David Sablan in Lot 330 (as well as lots 347 and 349) was agreed to be awarded to Guadalupe Sablan with the further agreement that the latter shall will the property to her children in equal shares. (See Excerpt of Proceedings 9/1/77, page 1, lines 16-22 and Decree of Divorce, ¶ 7c at page 5, Defendant's Exhibit A). Thus, it is clear that 11 years after the family gathering David assumed a position

**866**

entirely consistent with the grant of lot 330 by his father to Guadalupe and him.7/

In 1979, a suit was commenced against the tenants in the Blue Beach Motel, it was entitled <u>Sablan v. Cushnie & Fitzgerald</u>. (Civil Action 79-206, Commonwealth Trial Court) The named plaintiffs not only included Guadalupe but also Carmen M. Sablan and the children of David and Guadalupe including David P. Sablan.8/ During this proceeding, Carmen testified about the Sablan family gathering and confirmed the version of Guadalupe (See Trial Transcript (Partial) April 7, 1980, pp. 8-10).

David also testified essentially to the same but that the property was "in due course" to be his but in that at the time, (April, 1980) he was of the opinion the property belonged

_____

7/
Subsequently, David refused to sign the quitclaim deed for the property. Hearings were held in 1979 at which time he was ordered to sign the deed. Under threat of contempt and jail, he eventually signed the deed on June 4, 1981. At a hearing held before Associate Justice Gianotti, with David and his counsel present, the ostensible reason given for the failure/refusal of David to sign the quitclaim deed was that the property was to "ultimately be transferred to certain of the children" of the parties. There was no indication whatsoever that David didn't have any interest to convey. (See Transcript of Proceedings dated 11/27/79, p. 6). Additionally, David appealed the contempt order issued by the High Court on the ground that that Court no longer had jurisdiction. Once again, there was no assertion that David couldn't execute the deeds because he had no interest in lot 330.

8/
David P. Sablan and the other children of David M. and Guadalupe Sablan executed a power of attorney in favor of Guadalupe which, in part, authorized Guadalupe to sue for rents due from the Blue Beach Motel.

to his mother, Carmen. (See, Trial Transcript (Partial) April 7, 1980, p. 50).

The next lawsuit filed was Guadalupe Sablan v. David Sablan, Commonwealth Trial Court Civil Action 81-06. This suit was as a result of the appeal in High Court Civil Action 194-77 which held that the High Court no longer had jurisdiction to enforce the judgment in the Commonwealth of the Northern Mariana Islands. This action was brought to reduce the High Court judgment to a Commonwealth judgment for enforcement purposes and this was done on March 20, 1981. Among other motions filed in this action was one filed by David to amend the High Court divorce decree because "... defendant has no interest in Lots 330, 347 and 349 that are transferable."

Notwithstanding this assertion, the court ordered David to execute the quitclaim deed.

Shortly thereafter, Carmen Sablan v. Guadalupe P. Sablan, Commonwealth Trial Court Civil Action 81-111 was filed. This case pitted Carmen against Guadalupe and asked that title to lots 330, 347 and 349 be quieted in Carmen as against Guadalupe. In the complaint, it was asserted that Elias Sablan owned the lots and on his death they "become that of plaintiff herein to distribute to such of her children as she may determine." Guadalupe duly answered the complaint and attached to it an Exhibit "A" which is an affidavit dated August 8, 1979 of Carmen which recites almost exactly the history of lot 330 as testified to by Guadalupe. Succinctly put, Carmen affirms that

868

Elias transferred the lot to David and Guadalupe and that she disclaims any interest in the property. This affidavit was witnessed by Magdalena S. Manahane and acknowledged by a notary. Mrs. Manahane also signed an affidavit that she translated the document in Chamorro to Carmen.

Faced with this damaging exhibit, Carmen filed a new affidavit, in effect, disavowing the prior affidavit and claiming lot 330 as her own. She also implies that Guadalupe forced her to sign the 1979 affidavit and she was told what to testify during the trial of Civil Action 79-206. Even Mrs. Manahane filed an affidavit essentially disassociating herself with her involvement in the execution of the 1979 affidavit.

Guadalupe filed a motion for summary judgment based on Carmen's affidavit and the court granted summary judgment on July 9, 1981, but with leave for Carmen to file an amended complaint to raise in pleading form the issues of contrived testimony at the behest of Carmen as well as duress. On July 21, 1981 such an amended complaint was filed and an answer and counterclaim was entered and then a reply to the counterclaim. Then, on September 10, 1982 counsel filed a stipulation to dismiss the entire matter and on the same date the court dismissed it with prejudice.

The effect of the above proceedings is clear. All of the deeds which the plaintiffs rely upon to prove title adverse to Guadalupe originate from Carmen. However, the dismissal

with prejudice by Carmen of Civil Action 81-111 adjudicated her claim to lots 330 and 347. The judgment of dismissal, for all purposes, declared Carmen had no interest in the property. The term "with prejudice" expressed in a judgment of dismissal indicates an adjudication of the merits operating as res judicata. Lawlor v. National Screen Service Corp., 349 U.S. 323, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955). The doctrine of res judicata provides that a party to an action, or his/her privies, are barred from relitigating the same cause of action in a second proceeding. Expert Electric Inc. v. Levine, 554 F.2d 1227, 1233 (2nd Cir. 1977). There is privity within the meaning of res judicata where there is identity of interest and privity in estate. Chicago, Minneapolis and St. Paul Railroad Co. v. United States, 159 U.S. 372, 375, 15 S.Ct. 2627, 40 L.Ed. 185 (1895).

Thus the judgment of dismissal with prejudice in Civil Action 81-111 is binding as to a subsequent grantee or transferee. Louis v. Brown, 109 U.S. 162, 165, 3 S.Ct. 92, 95, 27 L.Ed. 892 (1883). All of the plaintiffs are encompassed within the rule and any claim they make through Carmen has already been decided against them.

In an effort to avoid the above result, plaintiffs contend that because Guadalupe's counterclaim in Civil Action 81-111 was also dismissed, the entire matter is a "wash" with no adjudication effect to either party. However, it is clear that a dismissal with prejudice constitutes a judgment for the

**870**

defendant. <u>Sandoval v. Superior Court</u>, 140 Cal.App.3a 932, 939, 190 Cal.Rptr. 29, 34 (1983).

All of the above leads the court to find:

1.    Elias Sablan was the owner of lot 330 and agreed to transfer said lot to his son, David, and his wife, Guadalupe, if they took over the payments on the Economic Development Loan Fund loan and paid it off.

2.    David and his wife performed the conditions and an oral transfer of lot 330 occurred prior to the death of Elias Sablan.

3.    That Carmen and all the other children of the family recognized and accepted this transfer from at least 1966 to 1979.

4.    From 1966 to 1977 Guadalupe and David possessed, controlled and managed lot 330.

5.    That through the various lawsuits the parties were involved in, the right of Guadalupe to sole ownership, control, and possession of lot 330 has been recognized and confirmed by the High Court of the Trust Territory and the Commonwealth Trial Court.

6.    Any purported transfer of the interest of Elias Sablan by Carmen Sablan was of no force and effect. Elias Sablan had already transferred his interest to David and Guadalupe prior to his death and Carmen never succeeded to the rights of Elias.

**871**

7. Title to lot 330 shall be quieted in Guadalupe Manglona against all defendants.[9]/

## LOT 347

There are two facets to the resolution of the claims to lot 347. Attention shall first be directed to the claim of Camacho, Fejeran and Rangamar which shall be referred to as the Malite claim.

There appears little doubt that lot 347 was part of a larger parcel originally owned by the Malite family. The claim of the Sablan's rest on the purported oral sale occurring over 50 years ago. Obviously, this creates a difficult problem in determining what actually transpired. To assist the fact finder, events subsequent to the transaction in question are used to piece together the puzzle. As can be expected, mixed signals are received.

The Sablan's can point to possession, use and control of lot 347 for many years to the almost total exclusion of the

---

[9]/ The plaintiffs filed a motion for summary judgment previously on the ground that Guadalupe could not hold title because of Article XII of the Constitution of the Commonwealth. This motion was denied upon the ground that Guadalupe acquired title prior to the effective date of Article XII. At final argument the plaintiffs invited the court to review the ruling because testimony at trial indicates that in 1966 neither David nor Guadalupe could have acquired title because both were U.S. citizens and under the then existing law one had to be a Trust Territory citizen. In quiet title actions, plaintiffs must prove their case on the strength of their own title not on any perceived defect of the defendants. Alexander Hamilton Life Ins. Co. v. Gov't of the Virgin Islands, 757 F.2d 534, 541 (3rd Cir. 1985); Rasnussen Drilling v. Kerr-McGee, 571 F.2d 1144, 1158 (10th Cir. 1978).

872

Malites. Additionally, a government determination of ownership in 1952 found the property to belong to Elias Sablan.

The Malites counter by relying on certain Japanese land records and other events which are inconsistent with a sale to the Sablan's. The Malites assert that Elias Sablan, as Land Title Officer in the 1950's and 1960's had improperly arranged for the determination of ownership to be issued in his name and no notice was given to the Malites. Yet, it is clear from the testimony of the Malites that they knew of the Sablan possession and claim. At most, it can be said the Malites asserted half-hearted attempts to recover the land over a span of 40 years. There are rare occasions of overt claims to the land. Probably the most significant is the land claim filed by Clara Camacho in 1945 (Malite Exhibit A).

The exhibits admitted into evidence and the history of lot 347 in the 1940's, 1950's, 1960's, 1970's and to the filing of this lawsuit in 1988 leads the court to find that there was a divestment of ownership by the Malite family to Elias Sablan in the late 1930's by an oral transfer and that this transfer is accurately recognized in Title Determination 188 in 1952 as being the property of Elias Sablan. Until the date of his death, Elias Sablan was the owner of lot 347 and the claim of the Malite family must be rejected.

This leaves for resolution the interest, if any, of Guadalupe Manglona in lot 347.

Elias Sablan had eight children upon his death. Since

**873**

he had no will, the court must look to the intestate succession law, such as it existed in 1968. <u>Palacios v. Coleman</u>, 1 CR 34 (DC NMI 1980) provides guidance in this regard. <u>Palacios</u> held that real property passes directly to the children but with an obligation by the children to support the deceased's surviving spouse. Thus, Carmen had the customary right to be supported by her children - an event which, from the testimony, actually occurred. Carmen had no power, authority or title to convey lot 347 to anyone since title had vested on the death of Elias in the eight children in equal shares.10/ Therefore, in 1977, David possessed a one-eighth undivided share in lot 347 and by virtue of his stipulation and the subsequent Decree of divorce on September 1, 1977, his interest passed to Guadalupe.

The subdivision of lot 347 and exchange of deeds between the children of Elias and Carmen did not consider the one-eighth interest of Guadalupe and thus she still has an undivided interest in the entire lot.11/

---

10/
As seen above in the discussions surrounding lot 330, once Civil Action 81-111 was dismissed with prejudice, Carmen's lack of any interest in lot 347 was adjudicated.

11/
The difficulty of accommodating the interest of Guadalupe is not lost on the court and as a practical matter the result reached may create the need for a partition suit. It is hoped the parties can resolve this problem by settlement. It is also important to recall that pursuant to the agreement of David and Guadalupe and the Decree of Divorce that Guadalupe has a contractual obligation to will her interest in lots 330 and 347 to the surviving children of the parties in equal shares.

This Memorandum Opinion shall constitute the findings of fact and conclusions of law of the court pursuant to Com.R.Civ.Pro. Rule 52.

Dated at Saipan, MP, this _6th_ day of June, 1989.

_____
Robert A. Hefner, Presiding Judge