Carroll **SHELBY**, Carroll Hall Shelby Trust and Carroll Shelby Licensing, Inc., a Texas Corporation, Plaintiffs,

v.

**FACTORY FIVE RACING, INC.**, a Massachusetts Corporation; LK Motorsports, a California Corporation; and Internet Community Partners, LLC d/b/a ffcobra.com, a Limited Liability Company, State of Organization Unknown, Defendants.

Civil Action No. 09–CV–10281–PBS.

United States District Court,
D. Massachusetts.

Feb. 16, 2010.

William J. Brennan, Sedgwick, Detert, Moran & Arnold LLP, New York, NY, Caroline Yana Bussin, Robert F. Helfing, Heather L. McCloskey, Sedgwick Detert Moran and Arnold, Los Angeles, CA, for Plaintiffs.

Tamara L. Dewar, James E. Doroshow, Brian T. Hafter, Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, Los Angeles, CA, Matthew N. Falley, Kellman Hoffer LLP, Manhattan Beach, CA, John F. Folan, Folan & McGlone P.C., New Bedford, MA, John W. Holcomb, Lydia J. Zadra–Symes Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, Gerald A. Phelps, Quincy, MA, Steven E. Snow, Robert K. Taylor, Randall T. Weeks, Jr., Partridge, Snow & Hahn LLP, Providence, RI, for Defendants.

### *MEMORANDUM AND ORDER*

SARIS, District Judge.

## I. INTRODUCTION

Carroll Shelby, the Carroll Hall Shelby Trust, and Carroll Shelby Licensing, Inc., (collectively, "Shelby") allege that Factory Five Racing, Inc. ("Factory Five" or "FFR"), LK Motorsports ("LK"), and Internet Community Partners, LLC ("ICP"), have engaged in trademark and trade dress infringement with respect to several of Shelby's marks and automobile designs. Essentially, Shelby contends that FFR is marketing knock-offs of the Daytona Coupe Cobra, one of its renowned racing and production cars. Factory Five has filed a Motion to Dismiss pursuant to Fed.

R.Civ.P. 12(b)(6) on the ground that Shelby's trade dress claims are precluded by res judicata and that its other claims are either moot or barred by the conditions of a prior settlement agreement. ICP has filed a separate Motion to Dismiss. After hearing and review of the record, the Court *ALLOWS* Factory Five's Motion to Dismiss and *DENIES* ICP's Motion to Dismiss.

## II. BACKGROUND

### A. *The Parties*

Plaintiff Carroll Shelby is a renowned race car driver who, following his retirement in the early 1960s, designed several racing and production cars, identified as "Shelby Cobras." (Compl. ¶ 9.) Among these are the Shelby Cobra 427 S/C ("427 S/C") and the Daytona Coupe Cobra ("Daytona Coupe"). (*Id.* ¶¶ 10, 11.) Shelby and his commercial entities allegedly own or are the licensees of numerous trademarks, including SHELBY, 289, and 427 S/C. (*Id.* ¶ 12.) In 1997, Ford Motor Company ("Ford") granted Shelby an exclusive license to use its COBRA trademark and various related logos in connection with the trade dress of the Shelby Cobra vehicles, including the Daytona Coupe. (*Id.* ¶ 17.)

Defendant Factory Five Racing manufactures and sells kit car replicas of Shelby vehicles, including the Type 65 Coupe and 427 Roadster, replica kits of Shelby's Daytona Coupe and 427 S/C, respectively. (*Id.* ¶ 20; Def. FFR's Mem. in Supp. Renewed Mot. to Dismiss 2.) In connection with those activities, Factory Five operates a website under the domain name www.factoryfive.com, on which it promotes and sells its kit cars, and which also contains a link to Defendant ICP's website, www.ffcobra.com. (Compl. ¶¶ 21, 22.) Defendant LK Motorsports is a manufacturer and distributor of Factory Five automobiles and kit cars. (*Id.* ¶ 31.)

### B. *The 2000 Litigation*

In 2000, Carroll Shelby, Carroll Shelby Licensing, Inc., and Shelby American, Inc., sued Factory Five in the United States District Court for the District of Massachusetts. *Carroll Shelby, et al. v. Factory Five Racing, Inc.*, 00–CV–10409–RWZ. Ford was a party to that litigation. The complaint there alleged that Shelby had rights in "trademarks and trade shapes consisting of, but not limited to, SHELBY, COBRA, and the COBRA SNAKE designs as those relate to the vintage 1960s automobiles created, designed, and made by Carroll Shelby." (FFR's Mem., Ex. A ¶ 13 ("2000 Complaint").) That complaint stated claims for trademark infringement, counterfeiting, dilution, and unfair competition under both the Lanham Act, 15 U.S.C. §§ 1051–1141n, and Massachusetts law.

The 2000 Complaint made specific reference to the design shape of the 427 S/C. (*Id.* ¶¶ 14, 15.) It did not identify the Daytona Coupe specifically, but made several allusions to the designs and trade shapes of Shelby's multiple famous automobiles. (*Id.* ¶¶ 13, 16–19.) Shelby also sought injunctive relief permanently restraining Factory Five from using the disputed marks and from "doing any other act or thing likely to induce the belief that FFR's business or products are in any way connected with Shelby's businesses, products or services or are sponsored or approved by Shelby." (*Id.* at 13, ¶¶ 1(a)-(b).) The parties' trial briefs in the prior litigation also focused primarily on the trade dress of the 427 S/C, while making wider reference to Shelby's other automobile designs. (*See* Opp. to Def. FFR's Renewed Mot. to Dismiss, Ex. 3 at 2; Def. FFR's Reply in Supp. Renewed Mot. to Dismiss, Ex. D at 2–4.)

The prior litigation resolved in 2002 with a settlement agreement, entered by the

court as an Injunction and Final Judgment by Consent. The injunction stated, "FFR, its agents, affiliates, heirs, successors, assigns, servants, employees and attorneys are permanently enjoined" from using certain trademarks, including COBRA, 427 S/C, SHELBY, SHELBY COBRA, and both DAYTONA COUPE and DAYTONA COUPE COBRA "on or in connection with the marketing, sale or distribution of motor vehicles, kit cars, parts and accessories for kit cars, automotive parts and accessories, or any other product not made by Ford or Shelby." (FFR's Mem., Ex. B ¶¶ 3.1, 4, 5.) The settlement also enjoined Factory Five from "using the Ford/Shelby Marks and names or any similar name or mark in a way that is likely to induce the belief that FFR's business, products or services are . . . connected with Ford's or Shelby's businesses, products or services or are sponsored or approved by Ford or Shelby." (*Id.* ¶ 3.3.) Ford and Shelby, in exchange, agreed to a dismissal of claims:

> All claims and defenses that have been asserted or could have been asserted as of this date for use of the Ford/Shelby Marks and names or any confusingly similar name, mark or domain name, are hereby satisfied and extinguished and dismissed with prejudice, subject only to each party's right to assert those names or marks in an attempt to enforce compliance with this Final Judgment. Shelby dismisses with prejudice all claims that have been asserted or could have been asserted relative to the trade dress or designs of FFR's kits, including but not limited to the kits known as the 427 Roadster and the Type 65 Coupe.

(*Id.* ¶ 9.) The Final Judgment also stated:

> In the event that Ford or Shelby believes that FFR has violated any of the terms and conditions of this Final Judgment, judicial enforcement of this Final Judgment many [sic] not be pursued unless Ford or Shelby first give written notice to FFR of the alleged violation and FFR fails to cure or remedy the situation to Ford's or Shelby's satisfaction within thirty (30) days of FFR's receipt of notice.

(*Id.* ¶ 10.)

### C. *The Present Litigation*

The second lap in this high-octane litigation began on December 1, 2008, when the Shelby again filed suit against Factory Five in the Central District of California, including claims against LK and ICP. Shelby again asserts claims for trademark infringement, trademark dilution, false advertising, and unfair competition under common law and the Lanham Act, as well as violations of common law and California statutory rights to publicity and of California's Business & Professional Code, Cal. Civ.Code § 3344. Shelby alleges that Factory Five, ICP, and LK are "agents of one another, and at all times each entity was acting within the course and scope of such agency." (Compl. ¶ 6.) Shelby did not provide FFR or its alleged agents the thirty days notice and opportunity to cure required under the 2002 Final Judgment, but did provide formal notice on December 23, 2008. (FFR's Mem., Ex. C.) Factory Five claims that it removed all offending content within thirty days of receiving that notice.

As to Factory Five specifically, Shelby now alleges (1) that FFR "utilizes the trademarks owned by and licensed to Plaintiffs in the metatags[1] of its website to

---

**1.** A "metatag" is an element of text placed in the head section of an HTML document that provides page description or keywords to Internet search engines. It is not visible to a visitor to the site.

draw Internet traffic," including the trademark "COBRA"; (2) that FFR's website includes a link to ICP's site, bearing the domain name www.ffcobra.com; and (3) that FFR "markets and sells 'replicas' of Shelby Cobra vehicles, including kit cars bearing designs confusingly similar to the Daytona Coupe Trade Dress," referring to FFR's Type 65 Coupe. (Compl. ¶¶ 20, 22, 23, 35–38.)

Shelby asserts that ICP uses its website, www.ffcobra.com, "a discussion forum for Shelby Cobra enthusiasts," to advertise and promote the sale of FFR's kits bearing the Daytona Coupe trade dress. (*Id.* ¶¶ 24, 25.) Plaintiffs claim that ICP has used the Shelby trademarks, including CO-BRA, SHELBY, and GT–500, in the domain name and the metatags of its website to draw Internet traffic. (*Id.* ¶ 26.) Shelby also claims that the Home Page of ICP's site contains a link "allowing visitors directly to access the Factory Five website and to report safety problems concerning Factory Five cars." (*Id.* ¶ 27.)

As to LK, alleged to be "the West Coast's premier builder of Factory Five replica cars," Shelby asserts infringement and dilution claims as to several of the Shelby marks. (*Id.* ¶ 31.) It also alleges claims for false advertising in connection with LK's representation that it builds "Cobras" and "continues the legacy" of authentic Shelby Cobra cars. (*Id.* ¶¶ 54–58.)

On January 23, 2009, Factory Five filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to transfer the case from the Central District of California to the District of Massachusetts. The Los Angeles court transferred the case to this Court by order dated February 23, 2009. Factory Five and ICP now present Renewed Motions to Dismiss.

## III. LEGAL STANDARD

In order to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95 (1st Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In considering a motion to dismiss for failure to state a claim upon which relief can be granted, courts must take as true the allegations in the plaintiff's pleadings and must make all reasonable inferences in favor of the plaintiff. *Rivera v. Rhode Island,* 402 F.3d 27, 33 (1st Cir.2005). The court may take into consideration the facts set out in public documents attached to the complaint or expressly incorporated therein. *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993). Here, both parties request that the Court take judicial notice of the prior complaint as well as the settlement agreement and consent judgment.

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotations and citations omitted). "The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim ... nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion." *Cordero–Hernandez v. Hernandez–Ballesteros,* 449 F.3d 240, 244 n. 3 (1st Cir.2006).

## IV. DISCUSSION

### A. *Shelby's Trade Dress Claims*

#### 1. *Res Judicata*

Factory Five argues that Shelby's Daytona Coupe trade dress infringement claims are barred by res judicata, since

they were or could have been raised in the previous litigation. Shelby contends that the prior case did not and could not have raised those claims, and included only the design of the 427 S/C.

■ The doctrine of res judicata bars a party from relitigating "claims that were raised *or could have been raised*" in an earlier action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (emphasis added). Federal law governs the issue where both cases raise federal questions. *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir.1994) (citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)). Under federal law, the elements required for a res judicata claim are "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *Breneman v. United States ex rel. F.A.A.*, 381 F.3d 33, 38 (1st Cir.2004) (internal quotations omitted).

There is no dispute here as to the first and third elements of that test. Shelby and Factory Five both were parties to the 2000 litigation, and the order terminating that action constitutes a final judgment for res judicata purposes. *Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir.1995).

■ The First Circuit uses a transactional approach, rooted in the factors listed in the Restatement (Second) of Judgments, to assess the identicality of the claims. "The necessary identity will be found ... if both sets of claims ... derive from a common nucleus of operative facts." *Gonzalez*, 27 F.3d at 755. This determination is made "pragmatically, giving weight to such considerations as [1] whether the facts are related in time, space, origin, or motivation, [2] whether they form a convenient trial unit, and [3] whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 7 (1st Cir.1992) (quoting Restatement (Second) of Judgments § 24 (1982)). None of these factors is determinative. *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir.1996).

■ Based on the Restatement factors, the Court finds that, even if they were not raised explicitly, Shelby's Daytona Coupe claims could have been raised in the prior litigation. First, the conduct underlying the two sets of claims—the time, space, origin, and motivation of the suits—is similar. "Space" is not relevant in this case, but the origin and motivation of the two suits is the same: Shelby's desire to enjoin production of Factory Five's allegedly infringing replicas. While the prior dispute focused on the trade dress of Shelby's 427 S/C, the 2000 Complaint referred repeatedly to the multiple Cobra "designs," "shapes," and "vehicles." Shelby's 2000 trial brief likewise referred to its multiple "famous and distinctive COBRA automobiles and, in particular, the 427 S/C COBRA," alleging that "Shelby's trademarks and designs for COBRA® automobiles have become famous, distinctive and very valuable." (FFR's Reply, Ex. D at 2–4.) Shelby has put those same issues into dispute here, targeting FFR's offending designs, which Shelby concedes have not changed. Furthermore, the motivations behind the suits, enjoining production of FFR's kit cars and removing consumer confusion between Shelby and FFR, are identical.

The remaining Restatement factors also suggest sufficient identicality, since the suits "would have formed a compatible trial unit," and treating them as such conforms to the parties' expectations. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 38 (1st Cir.1998) (citing

*Porn,* 93 F.3d at 34). The First Circuit has held that "where the witnesses or proof needed in the second action overlap substantially with those used in the first action, the second action should ordinarily be precluded." *Porn,* 93 F.3d at 36. Although the 2000 litigation focused "in particular" on the trade dress of the 427 S/C, Shelby asserted "wholesale infringement" with respect to its numerous famous designs, which include the Daytona Coupe. (FFR's Reply, Ex. D at 2.) The fame and recognition of Shelby's multiple automobile designs will again be in issue in the present litigation, and the same replicas addressed in the 2002 Injunction and Final Judgment are relevant here.

The First Circuit also has noted that "a party may be more readily presumed to expect that a court will treat multiple causes of action as a single trial unit when the plaintiff has all the facts necessary to bring the second claim at its disposal before or during the pendency of the first." *Mass. Sch. of Law,* 142 F.3d at 38; *see also Aunyx Corp.,* 978 F.2d at 8. Shelby had the facts necessary to bring the instant trade dress claims in 2000, even if it did not actually do so. Neither party's designs have changed. Significantly, Shelby was sufficiently aware of the potentially infringing design of the Type 65 Coupe to include it in the 2002 settlement agreement. The Restatement factors, therefore, indicate a sufficient identicality of the causes of action in Shelby's past and present suits for the Court to find that the trade dress claims are barred by res judicata.

### 2. *Continuing Torts*

Shelby argues that its claims are not barred under the doctrine of res judicata because they involve post-judgment conduct and, as a continuing tort, each instance of trade dress infringement gives rise to a new and independent cause of action.

The analysis of the effect of a settlement on causes of action arising from post-settlement conduct can be complex. Generally speaking, a judgment dismissing a suit with prejudice bars a later suit on "the same cause of action." *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). However, the fact that both suits involve the same "course of action" is not necessarily decisive. *Id.* " 'Subsequent conduct, even if it is of the same nature as the conduct complained of in a prior lawsuit, may give rise to an entirely separate cause of action.' " *Gonzalez–Pina v. Rodriguez,* 407 F.3d 425, 430 (1st Cir.2005) (quoting *Kilgoar v. Colbert County Bd. of Educ.,* 578 F.2d 1033, 1035 (5th Cir.1978)); *see also Storey v. Cello Holdings, L.L.C.,* 347 F.3d 370, 384 (2d Cir.2003) (Sotomayor, J.) ("Where the facts that have accumulated after the first action are enough on their own to sustain the second action, the new facts clearly constitute a new 'claim,' and the second action is not barred by *res judicata.*" (citing *Lawlor,* 349 U.S. at 328, 75 S.Ct. 865)). In *Lawlor,* the Supreme Court held that a new antitrust suit against a group of motion picture producers based on their conduct in supplying movie posters to a single company six years after settlement of a similar suit was not barred by res judicata where there were new antitrust violations and a substantial change in the scope of the defendant's monopoly. The Court explained that the prior judgment "cannot be given the effect of extinguishing claims which did not even then exist . . . in the previous case." *Id.* at 328, 75 S.Ct. 865. The First Circuit has interpreted *Lawlor* as holding that a judgment does not "bar an action based on conduct of the same nature as that originally alleged" where "the subsequent conduct was broader and more far-reaching than the conduct which led to the original complaint." *Walsh v. Int'l Long-*

*shoremen's Ass'n,* 630 F.2d 864, 873 (1st Cir.1980).

The central inquiry, then, is whether the subsequent trade dress violation involves the same cause of action which was settled or was broader or more far reaching. In this case, the settlement agreement resolved the Type 65 trade dress claims and did not bar FFR from using the Type 65 kits, which have apparently not broadened or changed in the intervening years. Under the settlement agreement, "Shelby dismisse[d] with prejudice all claims that have been asserted or could have been asserted relative to the trade dress or designs of FFR's kits, including but not limited to the kits known as the 427 Roadster *and the Type 65 Coupe.*" (FFR's Mem., Ex. B ¶ 9 (emphasis added).) Shelby's argument that the first suit only involved the 427 S/C contradicts the plain language of the settlement, which dismissed *all* claims "relative to the trade dress or designs of FFR's kits" involving Factory Five's Type 65 Coupe, not merely those relating to the trade dress of the 427 S/C. Moreover, the Final Judgment included numerous, specific references to both the name *and design* of the Daytona Coupe.

■ When sophisticated parties enter into a settlement, they " 'rely upon and have a right to expect a fairly literal interpretation of the bargain that was struck and approved by the court.' " *AccuSoft Corp. v. Palo,* 237 F.3d 31, 41 (1st Cir. 2001) (quoting *AMF v. Jewett,* 711 F.2d 1096, 1101 (1st Cir.1983) (as modified on denial of reh'g and reh'g en banc, Aug. 26, 1983)); *see also id.* ("[W]e do not consider it our place to 'rewrite contracts freely entered into between sophisticated business entities.' " (quoting *Mathewson Corp. v. Allied Marine Indus., Inc.,* 827 F.2d 850, 855 (1st Cir.1987))).

Shelby asserts that the settlement agreement does not apply to FFR's post-settlement conduct of the same kind under a continuing tort theory because there was no express waiver of future claims. The Federal Circuit rejected a similar argument in *Augustine Medical, Inc. v. Progressive Dynamics, Inc.,* 194 F.3d 1367, 1371 (Fed.Cir.1999), stating, "[c]onsistent also with judicial interpretations of general releases, it is the burden of the parties entered into a settlement agreement to expressly reserve in the agreement any rights that they wish to maintain beyond the date of the settlement agreement." *Id.* at 1373.

> Augustine had clear knowledge at the time of the Settlement Agreement that Progressive was producing and marketing the convective warming blankets at issue in the first suit … and it was likely obvious that the production and marketing would not cease the instant the … Agreement was signed. Therefore, it was Augustine's responsibility to "ma[k]e manifest" its intent to leave the issue of possible future patent infringement claims open for future resolution.

*Id.; see also Hallco Mfg. Co. v. Foster,* 256 F.3d 1290, 1297 (Fed.Cir.2001) (holding that patentee cannot later sue on the same patent for the same allegedly infringing device when a prior suit had been dismissed with prejudice under a settlement agreement).

■ The same considerations apply in this case. Although the settlement agreement did not have an express release of future claims based on the pre-existing trade dress, Shelby failed to reserve any rights with regard to future infringement of the already existing designs of the Type 65 Coupe and did not seek any injunctive relief. *See, e.g., Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1245 (10th Cir.1990) (holding that settlement did not apply to future claims where it contained express limiting

language); *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F.Supp.2d 329, 338 (S.D.N.Y.2006) (finding that settlement did not apply to future claims where "[plaintiff's] explicitly alerted [defendant's] counsel to the fact that, in [plaintiff's] view, the proposed release was not intended to cover all ... claims"); *cf. Community-Care HMO, Inc. v. MemberHealth, Inc.*, No. 06–CV–197, 2006 WL 6130987, at *5 (N.D.Okla. May 8, 2006) (holding that under the settlement agreement, the defendant agreed expressly not to use an infringing mark, and was therefore subject to a second action seeking a temporary restraining order when it did so). Accordingly, the Court concludes that the claims based on the trade dress of the Type 65 Coupe are banned both by the doctrine of res judicata and by the terms of the settlement.

### B. *Shelby's Remaining Claims*

Shelby's remaining claims address Factory Five's alleged use of Shelby's marks in the metatags of its own website and a link to ICP's ffcobra.com site. Unlike the trade dress claims, the settlement agreement expressly preserved these claims and prohibited FFR's future use of the disputed marks.

FFR argues that Shelby's remaining claims should be dismissed for failure to comply with the thirty-day notice and cure provision of the 2002 settlement agreement. Shelby argues that it provided adequate notice when it filed suit on December 8, 2008, and that, in any event, the provision does not apply here, since it is not seeking enforcement of the prior judgment, but rather pursuing an entirely new set of claims.[2]

■ Shelby's first argument fails easily. The settlement states that Shelby may not pursue enforcement of the agreement "unless [it] first give[s] written notice to FFR of the alleged violation and FFR fails to cure ... within thirty (30) days...." (FFR's Mem., Ex. B ¶ 10.) While the Complaint alerted the defendants to Shelby's claims, it did not provide the requisite thirty days opportunity to cure *in advance* of litigation.

Likewise, Shelby cannot avoid the notice and cure provision by claiming that it is not enforcing the prior settlement. The trademark claims Shelby now asserts with respect to Factory Five's web content and its links to ICP's site fall within the scope of the agreement, which prohibited FFR and its agents from using the trademarks at the heart of the present action. The injunction extended to the use of those names not only in domain names, but also in connection with the marketing or sale of motor vehicles, kit cars, or accessories. Shelby's own (belated) notice to Factory Five on December 23, 2008, more than three weeks after it filed the present action, indicates its understanding of the applicability of those provisions and their relevance to the present action.

In light of Shelby's failure to comply with the notice and cure provision of the settlement agreement, the remaining claims against it will be dismissed without prejudice to provide the requisite thirty day opportunity to cure and allow the parties a chance to resolve this dispute in accordance with it.[3] *Cf. Levi Strauss & Co. v. Esprit U.S. Distrib. Ltd.*, 588 F.Supp.2d 1076, 1078–81 (N.D.Cal.2008) (dismissing without prejudice claims failing to comply with a similar settlement provision); *LaSalle Bank Nat'l Ass'n v. Mudd,*

---

**2.** Factory Five also argues that those claims are moot since the offending content has been removed from its website.

**3.** Factory Five claims it has already cured the problem.

No. 03–1785, 2003 WL 22048158 (N.D.Ill. Aug. 29, 2003).

### C. *Shelby's Infringement and Dilution Claims*

#### 1. *Infringement*

■ Defendant ICP argues that Shelby has failed to state a cognizable claim for trademark infringement and dilution. To establish trademark infringement under the Lanham Act, a plaintiff must prove that: (1) it owns and uses the disputed marks; (2) the defendant(s) used similar or identical marks without permission; and (3) that unauthorized use likely confused consumers, harming the plaintiff. *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 60 (1st Cir.2008). ICP has not disputed Shelby's ownership over the trademarks at issue, so the Court begins with the second factor.

■ The use of a competitor's trademarks in HTML metatags or in the domain name of a website constitute use within the meaning of the Lanham Act. *Id.; People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir.2001) (finding use where defendant included plaintiff's mark in its website domain name); *Brookfield Commc'ns, Inc. v. W. Coast Entertainment Corp.*, 174 F.3d 1036, 1061–62 (9th Cir.1999) (holding use of similar marks in website metatags actionable trademark infringement).

■ To assess likelihood of consumer confusion, the third prong of an infringement claim, the First Circuit applies an eight-factor test, considering: (1) the similarity of the parties' marks; (2) the similarity of their goods; (3) the relationship between their channels of trade; (4) the relationship between their advertising; (5) the classes of their prospective purchasers; (6) evidence of actual confusion among consumers; (7) the defendant's subjective intent in using the marks; and (8) the strength of the marks. *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 10 n. 6 (1st Cir.2008) (citing *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir.1981)) (the "*Pignons* factors"). "No single criterion is necessarily dispositive in this ... inquiry." *Venture Tape*, 540 F.3d at 61.

■ The Complaint alleges that ICP uses marks identical to the SHELBY, GT–500, and COBRA names in the metatags and domain name of its website. Similarly, it sets forth allegations of the long-term and high profile use of the disputed marks, indicating that they are "strong" and well-known. *See Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 547 (1st Cir. 1995) (evaluating "strength" of marks through prominence in its field and length of time it has been used). The implication of these alleged facts is ICP's subjective intent to capitalize on the recognition of Shelby's marks.

Shelby alleges that ICP operates its website to promote, advertise, and even raffle off FFR's kits, which are replicas of Shelby's designs. Shelby also claims that ICP's website provides a discussion forum for Shelby Cobra enthusiasts and advertises goods and services of interest to such enthusiasts.

ICP's remaining arguments—that it does not sell goods competing with Shelby's and that its website contains a disclaimer allaying any consumer confusion—present facts beyond the face of the Complaint. Shelby need not allege that ICP is actually competing with it, but rather that ICP's use of the disputed marks creates a likelihood of confusion about the source of its goods or services. 15 U.S.C. § 1125(a)(1)(A).

#### 2. *Dilution*

ICP argues that Shelby has failed to adequately allege a trademark dilution

claim under 15 U.S.C. § 1125(c)(1), which states:

> Subject to the principles of equity, the owner of a famous mark that is distinctive ... shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

To set out a claim for dilution, Shelby must adequately allege both the famousness of the marks and dilution either by blurring (association impairing the distinctiveness of its marks) or tarnishment (association weakening the reputation of the marks). § 1125(c)(2)(A). ICP does not dispute the fame of Shelby's marks, so the Court must only determine whether the Complaint has asserted a claim for blurring or tarnishment of those marks.

▉ The statute defines dilution by blurring as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of a famous mark." § 1125(c)(2)(B). Furthermore:

> In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:
>
> (i) The degree of similarity between the mark or trade name and the famous mark.
>
> (ii) The degree of inherent or acquired distinctiveness of the famous mark.
>
> (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.
>
> (iv) The degree of recognition of the famous mark.

> (v) Whether the user of the mark or trade name intended to create an association with the famous mark.
>
> (vi) Any actual association between the mark or trade name and the famous mark.

Id. The Complaint alleges the fame and recognition of Shelby's marks extensively, and also asserts the substantial similarity between the parties' respective marks. Additionally, the use of the COBRA mark in ICP's domain name and in the metatags of its website suggests an intent to create an association between the site and Shelby's marks. These allegations adequately support a claim of trademark dilution.

ICP argues that its use falls within the fair use doctrine. See 15 U.S.C. §§ 1115(b)(4), 1125(c)(3)(A). While a fair use defense may be evident on the face of a complaint, the Court must disregard the numerous extrinsic facts ICP advances. See In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir.2003) (holding that a suit can be dismissed on the basis of an affirmative defense if facts establishing it are "definitively ascertainable from the allegations of the complaint" and "conclusively establish the affirmative defense.").

▉ Classic fair use doctrine provides that no infringement occurs when a defendant uses disputed marks descriptively, fairly, and in good faith. 15 U.S.C. § 1115(b)(4). "A use is fair where a descriptive portion of an otherwise distinctive trademark is used to describe a product rather than to appropriate goodwill." Tyco Healthcare Group LP v. Kimberly–Clark Corp., 463 F.Supp.2d 127, 136 (D.Mass.2006) (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 12 (2d Cir.1976)); cf. Hensley Mfg., Inc. v. ProPride, Inc., 579 F.3d 603, 612 (6th Cir. 2009) ("Because the complaint and attached exhibits show that [Defendant's]

uses of [Plaintiff's] name are descriptive, and because [Plaintiff] did not allege facts from which any inference of bad faith can be drawn, we hold that the fair use defense applies in this case as a matter of law.").

ICP argues that the name CO-BRA is used not to describe Shelby's automobiles, but rather to describe the subject of the discussion that occurs on its forums, FFR's racing car kits. However, the Complaint alleges specific facts asserting that ICP used the disputed marks in order to take advantage of Plaintiff's goodwill for commercial gain. To be sure, use of a name in a forum may be in good faith or protected by the First Amendment. However, when all reasonable inferences are drawn in Shelby's favor, dismissal on that basis is not warranted at this early stage of the litigation.

### ORDER

Defendant Factory Five's Motion to Dismiss [Docket No. 64] is *ALLOWED* without prejudice to permit refiling after notice is given. The claim relating to the trade dress of the Daytona Coupe is *DISMISSED WITH PREJUDICE.* Defendant ICP's Motion to Dismiss [Docket No. 73] is *DENIED.*