1362

GLOCK, INC., Plaintiff,

v.

The WUSTER, Defendant.

CIVIL ACTION NO. 1:14–CV–00568–AT

United States District Court,
N.D. Georgia, Atlanta Division.

Signed February 9, 2015

Eileen Elizabeth Hintz Rumfelt, Christopher Evan Parker, Miller & Martin, PLLC, Kelly L. Whitehart, Duane Morris, LLP, Atlanta, GA; Julianna Ellen Orgel, Michael Ryan Patrick, Nicole Ann–Marie Spence, Scott C. Allan, John F. Renzulli, Renzulli Law Firm, LLP, White Plains, NY, for Plaintiff.

Jeffrey D. Horst, Michael Awni Boutros, Krevolin & Horst LLC, Kelly O. Wallace, Wellborn & Wallace, LLC, Jamie Ponder Woodard, Wellborn, Wallace & Woodard, LLC, Atlanta, GA, for Defendant.

## ORDER

Amy Totenberg, United States District Judge

Plaintiff Glock, Inc. ("Glock") sued Defendant The Wuster for patent infringement, trademark and trade dress infringement and dilution, unfair competition under both federal and Georgia law, false advertising and false designation of origin, deceptive trade practices, and unjust enrichment. Before the Court is The Wuster's Motion to Dismiss or, in the Alternative, to Transfer Venue [Doc. 23] (the "Motion"). After the Motion was filed, the parties engaged in limited jurisdictional discovery.

At this point,[1] The Wuster raises essentially three arguments. First, the Wuster's conduct in Georgia is insufficient to confer personal jurisdiction because its sales to Georgia are *de minimis* and it does not direct commercial efforts at the state. Second, the case should be transferred to the Central District of California

---

1. Some of Defendant's arguments have become moot as a result of jurisdictional discovery. For example, Defendant's assertion that "GLOCK does not allege any of the infringing Airsoft guns were purchased in Georgia," (Doc. 23-1 at 4), is directly rebutted by The Wuster's supplemental interrogatory response that 101 "Airsoft Pistols at Issue" were sold by The Wuster "to persons or entities with billing addresses in Georgia and/or that were shipped to Georgia by year during the period from January 1, 2010" to March 31, 2014. (Doc. 43-13 at 3.) These arguments are not addressed herein.

because that is where The Wuster, the smaller of the parties, is located; it would be burdensome to litigate in Georgia; and California is more familiar with the law chosen to govern a prior settlement agreement. Third, most of Glock's claims are barred by res judicata as a result of that prior settlement agreement and consent judgment. The Court finds it has personal jurisdiction, transfer is not warranted, and res judicata cannot be properly decided at this time. The Motion is **DENIED**.

## I. FACTUAL BACKGROUND

Glock makes blocky guns. More specifically, accordingly to Glock's trade dress trademark registration, Glock pistols have "a blocky an[d] squared-off shape as viewed from the side, the front, and the rear." (Compl. ¶ 30 (quoting USPTO Reg. No. 2,807,747)). Glock pistols' "distinctive appearance and overall image ... represents a significant departure from the traditional pistol designs used by other pistol manufacturers." (*Id.* ¶ 28.) And "[d]espite some initial skepticism from gun traditionalists, the Glock pistols became enormously successful in the United States, with consumers and especially with law enforcement agencies." (*Id.* ¶ 26.) Glock protects its intellectual property ("IP") through both the trade dress trademark registration cited above as well as multiple trademark and patent registrations—some of which came into existence after 2010. (*Id.* at 9–14.)

The Wuster has a website that sells gas- and spring-powered pellet pistols called "airsoft" guns. Some of these airsoft guns look so much like Glocks that The Wuster's website often—but not always, (Doc. 1–18 at 9)—provides disclaimers at the end of its product descriptions. For example, the description of one of the allegedly infringing airsoft guns states:

The [Glock] G17 is one of the most highly regarded pistols in the world. This spring replica captures the look and feel of the world famous pistol. The HFC G17 is weighted to nearly match the exact weight of the actual thing. The locking slide will alert you when your magazine is empty, just like the real thing!

This airsoft gun is not to be misrepresented as a real firearm or gun that is manufactured by Glock and is merely an airsoft gun that fires 6mm pellets. The manufacturer of this airsoft gun is HFC.

(Compl. Ex. F–1 at 16, 19, Doc. 1–18).

The record reveals the following undisputed facts about The Wuster's relationship to Georgia. The Wuster is a corporation organized and existing under the laws of California with its principal place of business in California. (Pl.'s Reply, Decl. of Kent Wu ¶ 33, Doc. 23–2.) The Wuster has no offices, agents, or employees in Georgia. (*Id.*) The Wuster owns no real property in Georgia. (*Id.*) The Wuster pays no sales taxes in Georgia. (*Id.*) The Wuster has no banks accounts here, either. (Doc. 43–13 at 5.)

The Wuster does sell products to Georgia, though. The Wuster's website, AirSplat.com, filled 12, 591 Georgia orders from 2010 through March 31, 2014. (*Id.*) Those Georgia orders add up to $1,024,995.45. (Doc. 43–14 at 3.) $8,540 of that came specifically from the sale of that allegedly infringing products. (*Id.* at 4–5.)

The Wuster also has "AirSplat Armies" in Georgia. AirSplat Armies are essentially groups of airsoft enthusiasts that have banded together and received official recognition from The Wuster's marketing team. (Def.'s Resp. Ex. 9 at 114, Dep. of Kent Wu, Doc. 43–9). These Armies are

groups of "independent people that are used to promote AirSplat.com." (*Id.* at 110.) In order to be recognized, a group must undertake a multi-step application process that includes an "assessment of qualifications" by The Wuster. (*Id.* at 111–12.) Once approved by The Wuster, an AirSplat Army receives various benefits, including "discounts." (*Id.* at 113–14.) There are four Airsplat Armies in Georgia: AirSplat Americus, AirSplat Atlanta, AirSplat Buford, and AirSplat Marietta. (*Id.* at 114.) The Wuster advertises these Armies on its website. (*Id.*)

In 2009, Glock and two other gun manufacturers filed a lawsuit in Indiana state court that was subsequently removed to the Southern District of Indiana. (*See* Docs. 43–2, 43–3.) That complaint alleged many of the same types of violations, under both federal and Indiana law, that are at issue here. (*See* Doc. 23–3.) The case was transferred to the Central District of California and then, in March 2010, it settled. (*See* Settlement Agreement, Doc. 23–6) In the Consent Judgment, Glock stipulated to "[t]he dismissal with prejudice of Glock's claims in this lawsuit." (Doc. 23–7 at 3.)

## II. PERSONAL JURISDICTION

■ Defendant contends that the Court lacks personal jurisdiction. "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d at 1257–58 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.

2009)); *see also Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672, 620 S.E.2d 352 (Ga.Ct.App.2005). Defendant's particular argument is that The bluster's Georgia sales, equaling a mere 1.76% of its total revenue, satisfy neither the Georgia long-arm statute nor the Constitution's due process requirements.

The Court is persuaded that personal jurisdiction is proper for reasons articulated in three other cases: *Wish Atlanta, LLC v. Contextlogic, Inc.*, No. 4:14–CV–00051–CDL, 2014 WL 5091795 (M.D.Ga. Oct. 9, 2014); *Fusionbrands, Inc. v. Suburban Bowery of Suffern, Inc.*, No. 1:12–CV–0229–JEC, 2013 WL 5423106 (N.D.Ga. Sept. 26, 2013); and *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir.2013). In each of those cases, the courts held that specific jurisdiction was proper over an online retailer that sold allegedly patent-infringing and/or trademark-violating products into Georgia, particularly if the online retailer had other business contacts with entities in the state.

## A. Georgia Long–Arm Statute

■ The Georgia long-arm statute provides, in pertinent part, that a court may exercise jurisdiction over a nonresident defendant if he "[t]ransacts any business within this state." O.C.G.A. § 9–10–91(1). Both *Wish Atlanta* and *Fusionbrands* found jurisdiction under that provision. In the former, the defendant, via a website, "facilitated more than 16,000 transactions with Georgia consumers" in the preceding year, which generated "more than $26,000" in revenue for the company. *Wish Atlanta*, 2014 WL 5091795, at *3. Georgia sales only accounted for 1.005% of its total sales worldwide, but the defendant also had contracts with eight suppliers in Georgia. *Id.*

at *2. In *Fusionbrands*, the court stated, quite simply, that "sales of the infringing product [via defendant's websites] occurred in this district." [2] *Fusionbrands*, 2013 WL 5423106, at *4. Both of these sets of facts were held sufficient to satisfy the "transacts any business" standard of § 9–10–91(1).

Here, The Wuster filled 12,591 Georgia orders from 2010 through March 31, 2014, adding up to $1,024,995.45 in revenue for that period. By Defendant's own calculations, that equals 1.76% of its total revenue—a greater percentage than was found in *Wish Atlanta*. Sales to Georgia consumers in 2013 alone totaled $193,329.65, (Doc. 43–14 at 3), also greater than was found in *Wish Atlanta*. These numbers standing alone likely would persuade the Court that The Wuster "transacts business" in Georgia.

But there's more. The Wuster maintains mutually beneficial business relationships with four AirSplat Armies in Georgia. These groups apply to The Wuster for recognition, after which The Wuster assesses their qualifications and decides whether to approve their applications. If approved, the groups become a marketing device for the company, receiving various benefits in return—some of which appear to be monetary. The Wuster also advertises the existence of these groups on its website. Like the eight supplier contracts in *Wish Atlanta*, the four AirSplat Armies further confirm that The Wuster purposefully targeted commercial activity at Georgia.

## B. Constitutional Due Process

■ Having found that the Court would have jurisdiction over Defendant under Georgia's long-arm statute, the Court must consider whether the exercise of jurisdiction comports with due process. Defendant argues that the Court lacks specific jurisdiction because merely operating a nationwide website does not equate to purposeful availment, its contacts in Georgia are not related to the cause of action, and the exercise of personal jurisdiction over it would not comport with fair play and substantial justice. The Court disagrees.

■ While a sliding-scale test for specific personal jurisdiction over Internet website defendants exists and may be applicable in some cases, the Eleventh Circuit has concluded that "the traditional, three-prong test works just fine in [an] Internet case where the website was commercial and fully interactive." *Louis Vuitton*, 736 F.3d at 1355 n. 10. Under the traditional test, Plaintiff bears the initial burden to show that its claims "arise out of or relate to at least one of Defendant's contacts with the forum," and then that Defendant "purposefully availed [it]self of the privilege of conducting activities within the forum state." *Id.* at 1355 (internal quotations omitted). After Plaintiff meets this burden, Defendant "must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting and citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir.2010)). All three cases—*Wish Atlanta, Fusionbrands*, and *Louis Vuitton*—found jurisdiction was proper under this three-part test.

The first prong is satisfied by Defendant's admitted sale of the allegedly in-

---

2. The court did not consider, at this point in its analysis, the amount of revenue from allegedly infringing products, but that amount was "over $6,000.00." *Fusionbrands*, 2013 WL 5423106, at *6.

fringing products into the state. The second prong is satisfied for the reasons enumerated in the long-arm analysis above. And the third prong is satisfied, too, because Defendant's bare assertion that it would be unduly burdensome for it, a small company, to litigate in Georgia is unfounded. The bluster's revenues are upwards of $12 million annually. (Doc. 43–14 at 2–3.) Fair play and substantial justice are not offended by making The Wuster defend itself in Georgia, the forum chosen by Glock.

## III. TRANSFER

 Defendant also contends that the case should be transferred to the Central District of California. 28 U.S.C. § 1404(a) states that a district court may transfer a civil action to another district where it might have been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice." However, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996) (quotation and citation omitted). The Eleventh Circuit considers nine general factors in evaluating a motion to transfer under § 1404(a):

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir.2005).

The Court has considered all of the factors and concludes that transfer would be improper. While The Wuster's size tilts factor (6) slightly toward transfer, factor (8) at the very least levels the scales. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum."). The other factors do not weigh significantly toward one side or the other. Accordingly, Plaintiff's choice of forum will not be disturbed. *See also Wish Atlanta*, 2014 WL 5091795, at *8–*10; *Fusionbrands*, 2013 WL 5423106, at *7–*10.

## IV. RES JUDICATA

 Defendant argues that many of Plaintiff's claims are barred by res judicata as a result of the 2010 settlement of the Indiana Action. "Federal courts must apply federal common law to determine the preclusive effect of a prior federal court judgment." *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir.2014) (citing *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)). Under federal common law of preclusion, "a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). Requiring the causes of action to be the same means that, "[w]hile the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id.* at 328, 75 S.Ct. 865.[3]

Based on the record before the Court, it is not clear "from the face of the [C]omplaint" that Glock's claims are barred. *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir.1982) ("[A] party may raise a res judicata defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint."). Some of the underlying facts may indeed be the same, but new facts may mean some or all of the claims are not barred.

There appear to be two categories of facts "which did not even then exist" alleged in the Complaint: new guns and new IP. In the new guns category, Glock argues that "the overwhelming majority" of the 61 models listed were not being sold when the Indiana Action complaint was filed. (Pl.'s Resp. at 4 n.1). It appears from the current Complaint that each of Glock's claims could be based on the sale of almost any of the 61 models. (The

exception is *Count 1:* Infringement of Glock's '677 Patent, which is based on the sale of only twelve of the airsoft models.) As a result, prior to discovery on the timing of the allegedly infringing guns' appearance for sale on The bluster's website, the Court cannot conclude that any of Glock's claims are barred.

In addition, in the new IP category, Glock identifies two trademark registrations and a patent issuance that postdate the 2010 settlement. (Compl. ¶¶ 38, 39, 43.) From the face of the complaints, it is not obvious that claims based on this new IP are barred by the dismissal with prejudice of claims based on other, older IP. Defendant cites *Shelby v. Factor Five Racing, Inc.*, 684 F.Supp.2d 205 (D.Mass. 2010), for the proposition that claims based on different IP "could have been brought" in a prior IP suit. But the precluded IP claims in *Shelby* were based on IP that was already protected at the time of the first lawsuit and that was covered by the

---

**3.** The Court relies solely on federal res judicata principles in its analysis because some of the claims in the prior judgment were federal claims decided by a federal court. The parties have not raised a choice of law issue and both have assumed that Eleventh Circuit law applies. However, the Indiana Action complaint was originally filed in Indiana state court and contained state, federal, and common law claims. The case was removed and then transferred under § 1404(a) to California, where it was eventually settled by a consent order issued by a California federal court. "The federalistic aspects of res judicata are nowhere more bewildering than in addressing the broad question whether state law should affect the rules applied to federal adjudication of questions controlled by state law." 18B Fed. Prac. & Proc. Juris. § 4472 (2d ed.). Nevertheless, the Court relies on one res judicata standard in its analysis because, at this stage and on the discrete issue of new facts rendering preclusion inapplicable, it is not clear that there is any material

difference between the preclusion law of the Seventh, Ninth, and Eleventh Circuits, and the California and Indiana state courts. *See Lawlor*, 349 U.S. at 328, 75 S.Ct. 865; 40A Cal. Jur.3d Judgments § 194 ("A claim in the present proceeding is based on the same primary right as a claim in a prior action, for res judicata purposes, if it is based on the same conditions and facts in existence when the original action was filed...."); 22A Ind. Prac., Civ. Trial Prac. § 36.5 (2d ed.) (quoting *MicroVote General Corp. v. Indiana Election Com'n*, 924 N.E.2d 184 (Ind.Ct.App.2010)) ("[T]he most critical question for the application of res judicata is whether the present claim was within the issues of the first or whether the claim presents an attempt to split a cause of action or defense. It has generally been said that the test for making this determination is whether identical evidence will support the issues involved in both actions.").

broad[4] release of claims in the parties' prior settlement agreement. *Id.* at 212 ("Neither party's designs have changed. Significantly, Shelby was sufficiently aware of the potentially infringing design ... to include it in the 2002 settlement agreement.") Here, at least some of Glock's IP rights did not exist at the time the first lawsuit was filed, and the settlement release between the parties currently before the Court is much narrower than the one in *Shelby*.[5]

Accordingly, comparing the current Complaint to the pleadings and other documents from the Indiana Action that are properly before the Court, it is not possible to conclude, at this point, that any of Glock's claims in the instant suit are barred.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion [Doc. 23] is **DENIED**.[6] The parties are **DIRECTED** to specifically address, in their forthcoming Joint Preliminary Report and Discovery Plan, when each named model of airsoft gun became available for sale on The bluster's website so as to clarify the scope of issues post-Indiana Action.

**IT IS SO ORDERED** this 9th day of February, 2015.

---

4. The release at issue in *Shelby* stated, "All claims and defenses that have been asserted or could have been asserted as of this date for use of the Ford/Shelby Marks and names or any confusingly similar name, mark or domain name, are hereby satisfied and extinguished and dismissed with prejudice." 684 F.Supp.2d at 209.

---

5. Glock's stipulation in the Indiana Action Consent Judgment dismissed with prejudice only "Glock's claims in this lawsuit." (Doc. 23–7 at 3.)

6. Plaintiff's Motions for Leave to File a Sur-Reply [Doc. 45] and for Oral Argument [Doc. 46] are both **DENIED**.